**QUANTUM CORPORATION,**
**Plaintiff–Appellee,**

v.

**RODIME, PLC, Defendant–Appellant.**

No. 94–1296.

United States Court of Appeals,
Federal Circuit.

Sept. 22, 1995.

Rehearing Denied; Suggestion for
Rehearing In Banc Declined
Nov. 27, 1995.

John F. Lynch, Attorney, Arnold, White & Durkee, Houston, TX, argued for plaintiff-appellee. With him on the brief were Richard L. Stanley, J. Mike Amerson, and Gary J. Fischman; David B. Harrison, Quantum Corporation, Milpitas, CA, and Terence M. Fruth, Fruth and Anthony, PA., Minneapolis, MN, of counsel.

Margaret F. Pfeiffer, Attorney, Sullivan and Cromwell, Washington, DC, argued for defendant-appellant; Robert A. Sacks, Sullivan and Cromwell, Washington, DC, and John C. Altmiller, Kenyon and Kenyon, Washington, DC, of counsel.

Before PLAGER, LOURIE, and RADER, Circuit Judges.

PLAGER, Circuit Judge.

The question in this declaratory judgment action is whether amendments made during a prior reexamination proceeding impermissibly broadened the scope of the patent claims at issue in violation of 35 U.S.C. § 305 (1988),[1] and, if so, the legal effect thereof. Defendant patentee Rodime PLC (Rodime) appeals the decision of the United States District Court for the District of Minnesota, Civil Action No. 4–93–214. In its decision, the district court granted Quantum Corporation's (Quantum) motion for summary judgment that Claims 4, 6, 7, 9, 14 and 19–27 of U.S. Patent No. B1 4,638,383 (the reexamined '383 patent) are invalid because they were impermissibly broadened during reexamination. We *affirm.*

## I. BACKGROUND

### A.

Rodime is the owner of the reexamined '383 patent, which issued on November 29, 1988. The reexamined '383 patent is directed to a micro hard-disk drive system (3.5 inch drive) suitable for use in portable computers with performance parameters comparable to those available in 5.25 inch disk drive systems. Quantum, the plaintiff in this declaratory judgment action, is the manufacturer of disk drives which, Rodime alleges in its counterclaim, infringe its patent.

The claim limitation at issue in this appeal relates to the storage capability of the hard-disk. The storage capability of a hard-disk is a function of the track density; the greater the track density, the more data that can be stored in a given area of the disk. Track density may be defined in terms of "tracks per inch" (tpi), calculated based on the number of concentric tracks present within an inch along the radius of the hard-disk.

On November 19, 1985, James G. McGinley and Roderick M. Urquhart, two engineers at Rodime, filed a patent application for the invention described above. Claim 1 of this application recited, *inter alia,* a track density of "approximately 600" tpi. The examiner, in a first office action, rejected all the claims as obvious under 35 U.S.C. § 103. With respect to the track density limitation in Claim 1, the examiner stated:

> The art described in the preceding paragraph [regarding 5.25 inch disks] demonstrates that such a density is within the state of the art. Such a density would seemingly be achievable on a [3.5 inch] disk in the same manner by which it was achieved on a larger disk. Consequently it would seem that the subject matter of claim 1—which is seemingly quite general—should not be considered patentable.

In a response dated May 23, 1986, applicants cancelled the original claims and inserted new claims some of which recited a track density of "at least 600" tpi. Although applicants had replaced "approximately" with "at least" in the track density limitation of these new claims, they made no reference to this in their response, but instead focused on the difference between the size of their disks (3.5 inch) and those in the prior art (5.25 inch) as a basis for overcoming the examiner's rejection. The examiner subsequently allowed these new claims, and the patent issued on

1. Unless specified otherwise, all cites to the United States Code are for the year 1988.

January 20, 1987, as U.S. Patent No. 4,638,-383 (the original '383 patent). Claims 4, 6, 7, 9, and 14 of the original '383 patent all recited a track density of "at least 600 concentric tracks per inch."

On September 28, 1987, Rodime, the owner of the original '383 patent pursuant to an assignment from the inventors, requested reexamination of its patent. Finding a substantial new question of patentability, *see* 35 U.S.C. § 303, the United States Patent and Trademark Office (PTO) granted Rodime's request for reexamination of all 16 claims in the original '383 patent. In an office action dated April 19, 1988, the examiner rejected all but two of the original claims. Rodime responded by cancelling certain claims, amending others, and adding dependent Claims 17–31. With respect to the claims at issue in this appeal, Rodime made substantial amendments including changing the track density limitation from "at least 600" tpi to "at least approximately 600" tpi. These claims were allowed, as amended, and the '383 reexamined patent issued on November 29, 1988, as U.S. Patent No. B1 4,638,383. As issued, independent Claims 4, 6, 7, 9, and 14 of the reexamined '383 patent all recite a track density of "at least approximately 600" tpi, and the newly added dependent claims which are at issue in this appeal, i.e. Claims 19–27, either explicitly contain this limitation or incorporate it through their dependency.[2]

B.

Quantum filed the present action in the United States District Court for the District of Minnesota on February 26, 1993, seeking a declaration that the reexamined '383 patent is invalid, unenforceable and not infringed. Rodime subsequently filed an answer and a counterclaim for infringement. On February 22, 1994, Quantum filed a motion for summary judgment that Claims 4, 6, 7, 9, 14, and 19–27 of the reexamined '383 patent are invalid under 35 U.S.C. § 305 for being impermissibly broadened by Rodime during reexamination. According to Quantum, Rodime's amendment during reexamination of the track density limitation from "at least 600" tpi to "at least approximately 600" tpi broadened the scope of the claims to cover certain disk drives with approximately but less than 600 tpi that were not covered by the original '383 patent claims, and therefore these claims are invalid under 35 U.S.C. § 305.

2. Illustrative of the amendments made is Claim 4 with the sections within the brackets being the matter that was deleted and the underlined sections indicating the additions made to the claim during reexamination:

4. A computer disk drive system **[for operating a micro hard-disk, said disk drive system]** comprising:

*a sealed housing;*

at least **[one]** *two* micro **[hard-disk]** *hard-disks each* having a diameter of between 92 and 96 millimeters *and each having a plurality of concentrically adjacent tracks on both planar sides thereof, said micro hard-disks* fixedly mounted in **[a]** *the* sealed housing;

means for rotatably supporting said **[hard-disk]** *micro hard-disks;*

means for rotating said **[hard-disk]** *micro hard-disks;*

*first and second* transducer means **[having two read/write heads]** for writing digital information on and reading digital information from said **[hard-disk]** *micro hard-disks* on both planar sides of **[said]** *each micro* hard-disk in a format so that **[said]** *each micro* hard-disk has digital information stored on **[concentric]** *said concentrically adjacent* tracks at a density providing at least 5 Megabytes of storage per **[disk]** *micro hard-disk* with the digital information being stored at a density of at least **[6000]** *approximately 600* concentric tracks per inch, *said first and second transducer means each comprising two read/write heads;* **[and,]**

positioning means for moving said *first and second* transducer means between the *concentrically adjacent* tracks on said **[hard-disk]** *micro hard-disks,* said positioning means including:

*a positioning arm disposed within the sealed housing and mounted for movement relative to said micro hard-disks;*

*a pivot shaft coupled to one end of said positioning arm and supporting said positioning arm for rotational movement relative to said micro hard-disks, four support arms, each supporting one of said heads at one end and each connected to said positioning arm at its other end; and*

*means for moving said positioning arm including* a stepper motor *having a shaft extending into said sealed housing* and means for operating said stepper motor in step increments, each increment causing **[said transducer means]** *said read/write heads* to move from one track to the next adjacent track on said **[hard-disk]** *micro hard-disks.*

The district court, in an order dated April 11, 1994, granted Quantum's motion for summary judgment. The court, after examining the claims, specification, and prosecution history, concluded that the addition of the word "approximately" to the track density limitation during reexamination was not a mere clarification, as Rodime argued, but was instead a substantive change that expanded the scope of the claims at issue in violation of 35 U.S.C. § 305, and that no reasonable juror could have found otherwise. In support, the court relied on the difference in the ordinary meaning of the disputed claim limitations: a track density of "at least 600 tpi" indicates densities starting at, but greater than 600 tpi, whereas the addition of "approximately" in the track density limitation of the reexamined '383 patent modifies the 600 tpi value, thereby eroding the "not less than" meaning of "at least." Based on these definitions, it followed, according to the court, that the claims had been broadened during reexamination since the reexamined '383 patent covered devices with track densities less than 600 tpi that were not covered by the original '383 patent. The court then concluded, without analysis, that the improperly broadened claims were invalid.

Since the district court's ruling disposed of all the claims which Rodime in its counterclaim had alleged Quantum to infringe, the district court, on April 26, 1994, ordered that final judgment be entered under Fed. R.Civ.P. 58 in favor of Quantum for a declaratory judgment of nonliability and against Rodime for its counterclaim of infringement of the reexamined '383 patent. This appeal followed.

## II. DISCUSSION

There are two issues in this case: first, whether Rodime broadened the scope of the claims at issue during reexamination in violation of 35 U.S.C. § 305 by changing the track density limitation from "at least 600 tpi" to "at least approximately 600 tpi," and, second, assuming the claims were impermissibly broadened, the legal effect of violating section 305. We review the district court's grant of summary judgment in favor of Quantum on these issues—that the claims

were broadened and are therefore invalid—to determine whether any genuine issues of material fact are in dispute, and whether any errors of law were made. *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1537, 20 USPQ2d 1456, 1458 (Fed.Cir.1991).

### A.

35 U.S.C. § 305 states, in relevant part, that "[n]o proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding." An amended or new claim has been enlarged if it includes within its scope any subject matter that would not have infringed the original patent. *In re Freeman*, 30 F.3d 1459, 1464, 31 USPQ2d 1444, 1447 (Fed.Cir.1994). "A claim that is broader in any respect is considered to be broader than the original claims even though it may be narrower in other respects." *Id.* (quoting *Tillotson, Ltd. v. Walbro Corp.*, 831 F.2d 1033, 1037 n. 2, 4 USPQ2d 1450, 1453 n. 2 (Fed.Cir.1987)). Accordingly, the claims at issue have been improperly broadened in violation of 35 U.S.C. § 305 if the track density limitation in the claims of the reexamined '383 patent—"at least approximately 600 tpi"—is broader than the track density limitation in the claims of the original '383 patent—"at least 600 tpi."

Whether claims have been enlarged is a matter of claim construction, a question of law subject to complete and independent review on appeal. *Id.* at 1464, 31 USPQ2d at 1447. When construing the meaning of disputed terms in a claim, we look to the claims, specification and prosecution history. *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1577, 27 USPQ2d 1836, 1839–40 (Fed.Cir.1993). Although a patentee can be his own lexicographer, the words of a claim will be given their ordinary meaning to one of skill in the art unless the inventor appeared to use them differently. *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 951, 28 USPQ2d 1936, 1938 (Fed.Cir.1993).

Rodime's principle argument on appeal is that the addition of the word "approximately" to the track density limitation only made explicit what was already implicitly included

in the claim, and therefore did not expand the scope of the claims at issue. In support of this proposition, Rodime cites *Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 21 USPQ2d 1276 (Fed.Cir.1991), *Tennant Co. v. Hako Minuteman, Inc.*, 878 F.2d 1413, 11 USPQ2d 1303 (Fed.Cir.1989), and *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 1 USPQ2d 1202 (Fed.Cir.1986). Specifically, Rodime asserts that to one of skill in the art the term "600 tpi" means "approximately 600 tpi." In support, Rodime proffers the testimony of various technical experts who maintain that, because of manufacturing tolerances and variations inherent in rotary actuator drives, industry literature referring to a specific track density value is understood by those skilled in the art to represent a range. This interpretation, according to Rodime, is consistent with the specification which uses the terms "600 tpi" and "approximately 600 tpi" interchangeably. Since "600 tpi" means "approximately 600 tpi" to one of skill in the art, it necessarily follows, Rodime argues, that one of skill in the art would interpret "at least 600 tpi" to mean "at least approximately 600 tpi." Accordingly, Rodime concludes that the district court erred in not granting summary judgment in their favor, or, at a minimum, concluding that this evidence created a genuine issue of material fact to be resolved at trial.

We disagree. The major flaw in Rodime's argument is that it focuses solely on the term "600 tpi" instead of the claim limitation as a whole, in context. *See United States v. Telectronics, Inc.*, 857 F.2d 778, 781, 8 USPQ2d 1217, 1219–20 (Fed.Cir.1988), *cert. denied*, 490 U.S. 1046, 109 S.Ct. 1954, 104 L.Ed.2d 423 (1989). Even if "600 tpi" means "approximately 600 tpi," as Rodime argues, it is unnecessary to read in an implicit range when interpreting "at least 600 tpi" because this limitation as a whole already expressly represents an open-ended range, i.e. 600 tpi and up. Therefore, that one skilled in the art understands "600 tpi" to connote a range is irrelevant because the limitation in dispute is "at least 600 tpi," and Rodime offered no evidence to show that one skilled in the art understood "at least 600 tpi" to be the same as "at least approximately 600 tpi" or that the patentee defined it as such in the patent or during prosecution.

Absent such a definition or evidence that the claim limitation as a whole has a special meaning to one of skill in the art, we see no error in the district court's use of dictionary definitions to ascertain the ordinary meaning of the relevant claim limitation. *See, e.g., Hoganas*, 9 F.3d at 951 n. 8, 28 USPQ2d at 1938 n. 8 (using Webster's New World Dictionary, Third Edition, to define the word "straw"). Regarding the limitation "at least 600 tpi," the term "at least" means "as the minimum," Webster's Third New International Dictionary 1287 (1986), and therefore when coupled with a specific number sets forth an absolute lower limit of a range, i.e., 600 on up. *See Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 546, 31 USPQ2d 1666, 1670 (Fed.Cir.1994) ("[T]he term 'at least two' sets forth the minimum number of a particular element required."). The addition of "approximately" which means "reasonably close to,"[3] eliminates the precise lower limit of that range, and, in so doing extends the scope of the range. The term "at least approximately 600 tpi" therefore defines an open-ended range starting slightly below 600. *See, e.g., Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1455, 7 USPQ2d 1191, 1199 (Fed. Cir.1988) (reasonable likelihood of success of proving that accused products with affinities of $4.8 \times 10^7$ and 7.1 to $7.5 \times 10^7$ liters/mole literally infringe patent with a recited claim limitation for affinity of "at least about $10^8$ liters/mole"); *Ex parte Neuwirth,* 229 USPQ 71, 73 (Bd.Pat.App. & Int.1985) (addition of the word "substantially" during reexamination as a modifier for "rounded bottom wall" broadened the scope of the claim in violation of 35 U.S.C. § 305).

Since the amended limitation includes subject matter not covered by the original claims, i.e. track densities below 600 tpi, we conclude that Rodime expanded the scope of their claims during reexamination in violation of 35 U.S.C. § 305. To conclude otherwise would force us to alter what Rodime chose to claim as its invention in the original '383 patent, i.e., a track density range starting at

3. Webster's Third New International Dictionary 107 (1986).

600 tpi. We cannot do that. *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433, 7 USPQ2d 1129, 1131 (Fed.Cir.), *cert. denied*, 488 U.S. 986, 109 S.Ct. 542, 102 L.Ed.2d 572 (1988).

*Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 221 USPQ 568 (Fed.Cir.1984) raised similar issues, with similar results. In that case the court evaluated whether a reissued patent claim was "identical" to the original claim. The applicant originally filed a patent application for a device for packaging and safely transporting oil pipes with Claim 1 reciting, *inter alia*, a spacer block having a height "substantially equal to" the pipe diameter. *Id.* at 821, 221 USPQ at 571. Applicants amended this limitation during prosecution, and Claim 1 subsequently issued with a recited spacer block height "greater than" the pipe diameter. *Id.* The patentee subsequently amended this claim during reissue to cover a block height "substantially equal to or greater than" the pipe diameter. *Id.* at 822, 221 USPQ at 571.

The court, in determining whether the patentee was prohibited under 35 U.S.C. § 252, para. 1 from collecting damages for activities occurring prior to the issuance of the reissue patent, had to decide whether the patentee had made a substantive change to the claims during reissue. In this regard, the district court stated, and we affirmed, that:

> Seattle Box, in broadening its claims' scope to cover not only spacer blocks "greater than" but also "substantially equal to" the diameter of the pipes in a bundle, has, in our view, made substantive change to its claims. The original claims cannot reasonably be read as intending, but for some inaccuracy in their expression, the same coverage as the reissue claims. Here, the addition is not a matter of mere clarification of language to make specific what was always implicit or inherent.

*Id.* at 828, 221 USPQ at 575.

The relevant claim language and prosecution history in our case is remarkably similar to that in *Seattle Box*, and therefore this decision lends further support to the district court's conclusion that the amended claims in our case were also broadened.[4] First, the original claim limitations in both cases used precise language to define the scope of the coverage. In *Seattle Box*, the original claims recited a spacer block height "greater than" the pipe diameter, whereas in our case the original '383 patent recited a track density of "at least 600 tpi." Although both claims recite open-ended ranges, the lower limit is clearly defined in each claim. Second, in both cases, the claims at issue were amended to include words effecting a broadening of the claim. In *Seattle Box*, applicants added the term "substantially equal to" during reissue, whereas in our case the term "approximately" was added during reexamination.

Finally, in both cases the amended language was initially recited in the claims at issue, but was deleted in response to the examiner's first office action. As mentioned previously, Rodime's initial claims recited a track density of "approximately 600 tpi," but, along with other amendments, were changed to "at least 600 tpi." This not only parallels what occurred in *Seattle Box*, but it also contradicts Rodime's assertion that "approximately" was added during reexamination to clarify the language in the original '383 patent. If "approximately" merely clarifies the phrase "at least 600 tpi," it seems unlikely that this supposedly clarifying language would have been deleted, as it was, during the initial prosecution.

In view of all the foregoing, we conclude, as a matter of law, that Rodime broadened the scope of the claims at issue during reexamination in violation of 35 U.S.C. § 305. Accordingly, we affirm the district court's grant of summary judgment on this issue.

B.

■ But what are the consequences of such a broadening? Are the claims entirely invalid, or is invalidity limited only to the

4. The test for determining whether a reexamined claim is broader than an original claim under 35 U.S.C. § 305 is the same as that in 35 U.S.C. § 251, last paragraph, for determining whether reissue claims filed more than two years after issuance of the original patent are broader than the original claims. *In re Freeman*, 30 F.3d 1459, 1464, 31 USPQ2d 1444, 1447 (Fed.Cir. 1994).

broadened aspects of the claims, so that the original scope of the claims remains available to the patentee? The district court's analysis concluded when it determined that the reexamined claims were broader than the original claims in the '383 patent, apparently believing that it necessarily followed that the claims at issue are therefore invalid. However, the Patent Act is silent regarding the proper remedy to be employed by a district court in a patent infringement suit when it determines that claims were improperly broadened during reexamination in violation of 35 U.S.C. § 305. Neither the express words in section 305 nor its legislative history provide any guidance in this situation; they merely recite the prohibition against broadening during reexamination.

35 U.S.C. § 282, which lists various affirmative defenses in a patent infringement suit, allows a defendant in a patent infringement action to assert an invalidity defense based on a failure to comply with any of the statutory requirements in 35 U.S.C. § 251 for *reissue* applications.[5] Therefore, a district court could declare that reissued claims are invalid as a matter of law if they were impermissibly broadened in violation of 35 U.S.C. § 251, para. 4.[6] *See Tillotson Ltd. v. Walbro Corp.*, 831 F.2d 1033, 4 USPQ2d 1450 (Fed.Cir.1987) (reversing a district court's grant of summary judgment of invalidity since genuine issues of material fact existed whether reissued claims filed more than two years after the original patent were broader than the original claims). However, despite the fact that the prohibition in section 251 against enlarging the scope of claims in reissue applications is analogous to the prohibition in section 305 regarding broadening during reexamination,[7] section 282 does not specifically mention section 305 as an invalidity defense in a patent infringement suit.

Our precedent does not address this issue either. *In re Freeman*, 30 F.3d 1459, 31 USPQ2d 1444 (Fed.Cir.1994), was an appeal from a decision of the PTO sustaining an examiner's rejection of claims as impermissibly broadened in violation of section 305. It does not speak to the issue of whether a district court can declare previously issued claims invalid for failure to comply with section 305. *Fortel Corp. v. Phone-Mate, Inc.*, 825 F.2d 1577, 3 USPQ2d 1771 (Fed.Cir. 1987) was an appeal from a district court decision in which reexamined claims were found to have been broadened during reexamination in violation of section 305, but the issue in that case was whether the patentee could enforce these broader claims against an accused infringer who had ceased his allegedly infringing activity prior to issuance of the reexamined patent. Our court held that since the reexamined claims were broadened they were not substantively identical to the originally issued claims within the meaning of 35 U.S.C. § 252, para. 1, and therefore the district court properly granted summary judgment that the claims could not be enforced against the defendant.[8] Validity was not at issue in *Fortel* because the defendant in *Fortel*, unlike the defendant in our case, did not raise it as a defense.

Despite the absence of specific statutory language or precedent of this court in support of the district court's judgment that the claims at issue are invalid, we conclude that,

5. 35 U.S.C. § 282 reads in relevant part:

> The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded:
>
> (1) Noninfringement, absence of liability for infringement or unenforceability,
>
> (2) Invalidity of the patent or any claim in suit on any ground specified in part II of this title as a condition for patentability,
>
> (3) Invalidity of the patent or any claim in suit for failure to comply with any requirement of sections 112 or 251 of this title,
>
> (4) Any other fact or act made a defense by this title.

6. Paragraph 4 of 35 U.S.C. § 251 reads:

> No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent.

7. The only difference between the prohibitions against broadening in section 251 and section 305 is that *reissued* patent claims can not be broadened more than two years after issuance of the original patent, whereas claims in a *reexamined* patent can never be broadened.

8. 35 U.S.C. § 307(b) states that amended or new claims found to be patentable during reexamination will have the same effect as that specified in 35 U.S.C. § 252 for reissued patents.

as a matter of law, the district court arrived at the correct result. The purpose of the reexamination process is to provide a mechanism for reaffirming or correcting the PTO's action in issuing a patent by reexamining patents thought to be of doubtful validity. *In re Etter,* 756 F.2d 852, 857, 225 USPQ 1, 4 (Fed.Cir.), *cert. denied,* 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985). Consistent with this overall purpose, Congress enacted section 305 which, while allowing an applicant to amend his claims or add new claims to distinguish his invention over cited prior art, explicitly prohibits any broadening of claims during reexamination. If an applicant fails to claim as broadly as he or she could have, the proper recourse, if within two years of issuance of the patent, is to file a reissue application, *see* 35 U.S.C. § 251, not to remedy this problem in a reexamination proceeding.

█ As with violations of other statutes in the Patent Act, claims that do not comply with section 305 cannot stand. Rodime agrees, but maintains that the proper recourse is for this court to exercise its inherent equitable powers by restricting the scope of the claims to their original terms, avoiding a holding of infringement against any devices that would not have been covered by any of the original claims as they existed prior to reexamination. *See Texas Instruments, Inc. v. United States Int'l Trade Comm'n,* 846 F.2d 1369, 1371–72, 6 USPQ2d 1886, 1889 (Fed.Cir.1988). We disagree. Although we construe claims, if possible, so as to sustain their validity, *Carman Indus., Inc. v. Wahl,* 724 F.2d 932, 937 n. 5, 220 USPQ 481, 485 n. 5 (Fed.Cir.1983), it is well settled that no matter how great the temptations of fairness or policy making, courts do not redraft claims. *Autogiro Co. of Am. v. United States,* 384 F.2d 391, 395–96, 181 Ct.Cl. 55, 155 USPQ 697, 701 (1967). Moreover, even if we could consider equities, they do not favor Rodime; they broadened their claims during reexamination despite the explicit prohibition against doing so in section 305.

Likewise, the district court cannot remand the case to the PTO to have the broadening language deleted from the claims. *Cf. Green v. Rich Iron Co.,* 944 F.2d 852, 20 USPQ2d 1075 (Fed.Cir.1991) (holding that a district court could not compel a patentee to seek reissue of his patent). To conclude otherwise would discourage instead of encourage compliance with section 305. If the only penalty for violating section 305 is a remand to the PTO to have the reexamined claims narrowed to be commensurate in scope with what the applicant was only entitled to in the first place, then applicants will have an incentive to attempt to broaden their claims during reexamination, and, if successful, be able to enforce these broadened claims against their competitors. This result essentially renders the prohibition in section 305 meaningless. *See In re Bennett,* 766 F.2d 524, 530, 226 USPQ 413, 417 (Fed.Cir.1985) (Miller, J., dissenting) ("There is no evidence before this court rebutting the basic presumption that Congress shall not be deemed to have done a futile thing."). The likelihood that improperly broadened claims will be held invalid will discourage applicants from attempting to broaden their claims during reexamination.

Our conclusion that the claims at issue are invalid is not inconsistent with 35 U.S.C. § 282. Section 282 does not state that the list of invalidity defenses contained therein are the only ones available; the statute merely says "[t]he following shall be defenses." The express words of section 282 therefore allow for the existence of other invalidity defenses.

█ We conclude that a violation of 35 U.S.C. § 305 is an invalidity defense in a patent infringement action, and therefore the district court, upon finding correctly that the claims at issue were improperly broadened during reexamination in violation of section 305, properly granted Quantum's motion for summary judgment of invalidity.[9]

9. We have considered the other objections to the district court's judgment raised by Rodime in their brief, and find none sufficiently meritorious to require overturning of the district court's judgment.

## III. CONCLUSION

The judgment of the district court granting summary judgment in favor of Quantum that Claims 4, 6, 7, 9, 14, and 27 of the reexamined '383 patent are invalid as being improperly broadened during reexamination in violation of 35 U.S.C. § 305, is

***AFFIRMED.***