HUANG, et al., Plaintiffs,

v.

AUTOSHADE, et al., Defendants.

No. CV–92–6487 RJK.

United States District Court,
C.D. California.

Jan. 6, 1997.

Anthony J. Dain, Dain & Li, San Diego, CA, for Plaintiffs.

Lewis Anten, Dorie Choderker, Amedeo Ferraro, Lewis Anten, A Professional Corporation, Encino, CA, for Defendants.

## MEMORANDUM OF DECISION & ORDER

KELLEHER, District Judge.

The parties to this patent suit came before this court on November 12, 1996, at 10:00 a.m., the Honorable Robert J. Kelleher presiding.

The court, having read and considered the papers filed in connection with the court trial, or *Markman* proceeding, and having reviewed and considered the papers filed previously as they pertain to the issues raised in the *Markman* proceeding, and having heard oral argument of counsel thereon, determines as follows:

### I. Background

On October 29, 1992, Plaintiffs En Liung Huang and Pioneer Pacific Incorporated (collectively "Plaintiff") filed suit against Defendants Avi Ruimi and Auto–Shade ("Auto–Shade," or, collectively, "Defendant") for infringement of a sunshade patent. Patent No. 5,024,262 (the "original patent") was issued to

Huang for a Compact Foldable Automobile Sunshade, which he licensed to Pioneer.

On June 14, 1993, Defendant Auto–Shade moved for summary judgment, contending that it could not be liable for infringing on the original patent since the original patent was invalid. Auto–Shade contended that the original patent was invalid because it was anticipated or made obvious by the existence of prior art that was not considered by the Patent and Trademark Office (PTO) during the prosecution. Following a petition to this effect, the PTO began reexamination proceedings to consider the newly-identified prior art.

This court denied Defendant's motion for summary judgment and subsequently granted a stay of the action until the Patent and Trademark Office concluded its reexamination of the original patent, taking into account the prior art and publications. On July 12, 1994 the PTO issued a Reexamination Certificate (the "reexamined patent") which certified the Patent in Suit as valid. The Reexamination Certificate canceled claims 1–14 of the original patent and substituted claims 15–28 in their stead. In the original patent, only Claim No. 1 is an independent claim. In the reexamined patent, Claims 15 and 16 are both independent claims.

After the PTO concluded this examination, Defendant Auto–Shade moved for summary judgment again, this time contending that Plaintiff's reexamined patent was invalid because the PTO impermissibly broadened the scope of the patent. In its motion for summary judgment, Defendant asked the court "to review the language of Reexamined Claims 15–28 of the Patent in Suit added during the reexamination proceedings to determine whether those claims are broader than the original Claims of the Patent in Suit." The court denied summary judgment. On February 26, 1996, the court denied Defendant Autoshade's motion for reconsideration of the denial of summary judgment.

On April 15, 1996, this court signed the parties' Pretrial Conference Order (the "PTCO").

On August 26, 1996, this court denied without prejudice Plaintiff's motion *in limine* to preclude Defendant from rearguing the issue of whether the claims were impermissibly broadened during reexamination and Defendant's motion *in limine* to preclude Plaintiff's damages prior to the reexamination of the Patent in Suit.

On November 12, 1996, the parties came before this court for the pre-jury trial proceeding known as a *"Markman* hearing" or *"Markman* trial," after the recent Supreme Court decision in *Markman, et al. v. Westview Instruments Inc., et al.,* —— U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). At that hearing a number of issues were presented to the court for decision pursuant to the Amended PTCO drafted by the parties. On November 13, 1996, this court issued an Order as to *Markman* Trial Issues of Law holding that certain of the issues identified by the parties were not proper *Markman* issues, and would have to await the later stages of the trial. The court took the remaining issues under submission. Specifically, the court took under submission the questions:

1) What is the meaning and scope of the specific language employed in the patent claims;

2) What is the scope of the claims of the patent in suit generally;

3) Were the claims broadened during the reexamination proceeding; and

4) Are the claims in the reexamined patent identical to the claims of the original patent in suit for the purpose of computing damages? *See En Liung Huang, et al. v. Auto–Shade, Inc., et al.,* 945 F.Supp. 1307 (C.D.Cal.1996).

The court now decides these issues.

## II. Broadening of the Claims and "Identicality"

### A) Standard

■ Under 35 U.S.C. § 305, "[n]o proposed amendment or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding." Whether amendments enlarge the scope of a claim is a matter of claim construction. *In re*

*Freeman,* 30 F.3d 1459, 1464 (Fed.Cir.1994). The Supreme Court has recently held that the construction of the scope and meaning of a patent claim is a question of law exclusively for the court to decide. *Markman,* —— U.S. at ——, 116 S.Ct. at 1387. Consequently, whether or not the claims of the Patent in Suit have been impermissibly broadened during the reexamination proceeding is a question of law for decision by the court.

In a PTO *reissue* proceeding, enlargement of the scope of the claims is permissible, if conducted within two years of the issuance of the original patent. 35 U.S.C. § 251. Although enlargement of the scope of the claims is impermissible in a patent *reexamination* proceeding, the standard used to determine whether the claims have in fact been broadened is the same. *In re Freeman,* 30 F.3d at 1464. "A claim is enlarged if it includes within its scope any subject matter that would not have infringed the original patent." *Id.* (citing *Ex parte Neuwirth,* 229 U.S.P.Q. 71 (PTO Bd.Pat.App. & Int'f 1985)). A claim is broader "if it contains within its scope any conceivable apparatus or process which would not have infringed the original patent * * *. A claim that is broader in any respect is considered to be broader than the original claims even though it may be narrower in other respects." *In re Freeman,* 30 F.3d at 1464 (citing *Tillotson, Ltd. v. Walbro Corp.,* 831 F.2d 1033, 1037 n. 2 (Fed.Cir. 1987)). Recently, the Federal Circuit has expressly reaffirmed this standard in the context of patent reexamination. *Quantum Corp. v. Rodime, PLC,* 65 F.3d 1577, 1580 (Fed.Cir.1995), *cert. denied* —— U.S. ——, 116 S.Ct. 1567, 134 L.Ed.2d 666 (1996).

When construing the claims of a patent, the court looks to the objective meaning of the terms of the document. "No inquiry as to the subjective intent of the applicant or PTO is appropriate or even possible in the context of a patent infringement suit. The subjective intent of the inventor when he used a particular term is of little or no probative weight in determining the scope of the claim (except as documented in the prosecution history)." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 985 (Fed.Cir. 1995) (En Banc), *aff'd,* —— U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Thus, although an inventor is allowed to attach special meaning to the terms he uses in his patent, this special meaning must appear on the face of the patent itself or in the prosecution history. The court looks to the language of the claims, to the specification, and to the prosecution history. *Quantum,* 65 F.3d at 1577 (citing *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.,* 15 F.3d 1573, 1577 (Fed.Cir.1993)). *Cf. SRI Int'l v. Matsushita Elec. Corp. Of America,* 775 F.2d 1107, 1118 (Fed.Cir.1985). The focus of the court is to be "on the objective test of what one of ordinary skill in the art at the time of the invention would have understood the term to mean." *Markman,* 52 F.3d at 986. "Although a patentee can be his own lexicographer," the court should give the words of a claim the "ordinary meaning" attached by "one of skill in the art," unless it appears from the above materials that the inventor used them differently. *Quantum,* 65 F.3d at 1580 (citing *Hoganas AB v. Dresser Indus., Inc.,* 9 F.3d 948, 951 (Fed.Cir.1993)).

**B) Analysis**

The original independent claim (No. 1) and the amended independent claims (Nos. 15 & 16) are as follows, the italicized passages being those in dispute:

*Original Claim No. 1*

1. An *automobile window sunshade* comprising:

    a sheet of at least one layer of a flexible first material, said sheet having front and back surfaces, with at least one of said surfaces including a material suitable for reflecting light and heat radiation; and

    a single closed loop of a strip of a spring-like second material secured to

*Reexamined Claims Nos. 15, 16*

15. A *vehicle sunshade system* comprising:

    (a) *a vehicle window having a surrounding frame internal said vehicle;*

    (b) a sheet of at least one layer of a flexible first material, said sheet having frontal and rear surfaces, at least one of said surfaces including a material suitable for reflecting light and heat radiation; and

said sheet throughout an entire perimeter thereof;

wherein said sunshade can be (1) deployed in a first, open configuration, said singular closed loop being *continuously deformable to a predetermined contour of said automobile window,* and (2) twisted to form at least a pair of sections, said sections being foldable in layered fashion to form a second, compact configuration for storage; and

wherein restoring spring forces of said spring-like second material of said strip makes *[sic]* possible the retention of said sunshade inside a surrounding frame of a window in an automobile.

(c) a single closed loop of a strip of spring-like second material secured to said sheet throughout an entire perimeter thereof, said spring-like second material having restoring spring forces *for bearing against at least a portion of said frame of said vehicle window* for maintaining said flexible first material and said spring-like second material in fixed relation *adjacent a surface of said vehicle window,* wherein said combined flexible first material and said spring-like second material can be (1) deployed in a first, open configuration, said single closed loop being *substantially continuously deformable* to a predetermined contour of said vehicle window, and, (2) twisted to form at least a pair of sections, said sections being foldable in layered fashion to form a second, compact configuration for storage.

16. *A vehicle sunshade system* comprising:

(a) *a vehicle window having a surrounding frame internal said vehicle;*

(b) *at least one visor rotatably mounted adjacent said surrounding frame;*

(c) a sheet of at least one layer of flexible first material; said sheet having frontal and rear surfaces, at least one of said surfaces including a material suitable for reflecting light and heat radiation; and

(d) a single closed loop of a strip of a spring-like second material secured to said sheet throughout an entire perimeter thereof, said spring-like second material for *resiliently bearing against at least a section of said frame of said vehicle window* and said *visor being adjustably rotated into contiguous relation with said sheet rear surface for maintaining said combined flexible first material and said spring-like second material in fixed relation adjacent a surface of said vehicle window,* wherein said combined flexible first material and said spring-like second material can be (1) mounted in an open configuration to said vehicle window frame, said single closed loop being *substantially continuously deformable* at a predetermined contour of said vehicle window, said flexible first material being sandwiched between an interior surface of said vehicle window and said visor, and (2) twisted to form at least a pair of combined sections, said combined sections being foldable in layered fashion to form a compact configuration for storage.

Briefly put, Defendant Auto–Shade contends that these changes impermissibly broaden the scope of the original patent by: (1) replacing "automobile" with "vehicle"; (2) providing for a "substantially continuously deformable sunshade" instead of a "continuously deformable sunshade"; (3) providing that the sunshade is held in place through use of the automobile's existing visor; and by (4) providing that the sunshade is placed "adjacent" to the surface of a vehicle window instead of requiring that the sunshade be retained inside a surrounding frame of a window of an automobile.

The linguistic changes between these two sets of claims are, quite obviously, considerable, and even seemingly minute alterations in claim language can be sufficient to require invalidation of the patent. *See, e.g., Quantum,* 65 F.3d 1577; *In re Freeman,* 30 F.3d at 1464; *Ex parte Neuwirth,* 229 U.S.P.Q. 71 (1985). It is, however, the scope of the claims that must be identical, not the words used. *Slimfold Mfg. Co. v. Kinkead Indus., Inc.,* 810 F.2d 1113, 1117 (Fed.Cir.1987). " 'Identical' does not mean verbatim." *Laitram Corp. v. NEC Corp.,* 952 F.2d 1357, 1361 (Fed.Cir.1991). Rather, the claims are "identical" if they are "without substantive change." *Kaufman v. Lantech, Inc.,* 807 F.2d 970, 977 (Fed.Cir.1986); *Seattle Box Co. v. Industrial Crating & Packing,* 731 F.2d 818, 827 (Fed.Cir.1984).

There is, thus, no *per se* rule that linguistic changes introduced during reexamination proceedings to distinguish prior art constitute substantive alterations. *Laitram Corp. v. NEC Corp.,* 952 F.2d at 1362. Rather, to "determine whether a claim change is substantive it is necessary to analyze the claims of the original and the reexamined patents in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information." *Id.* at 1363.

Nonetheless, the court must bear in mind that it is the claim itself that constitutes the protected invention, and not the specification or the prosecution history. *SRI,* 775 F.2d at 1121. The court may permissibly look to these latter to illuminate the terms used in the claim, but it is ultimately the scope of the *claim* that is at issue. Otherwise, the statutory requirement that a patent delineate specific claims would be meaningless. *Id.* "The claim defines the scope of the patent grant." *Markman,* ——— U.S. at ———, 116 S.Ct. at 1388 (internal quotation marks and citation omitted).

### 1) Use of the term "vehicle" instead of "automobile"

■ Defendant argues that the new language in the reexamined claims that refers to a "vehicle" rather than an "automobile" broadens the scope of the claims. Armed with a panoply of dictionary definitions and the expert testimony of a linguist, Defendant contends that the word "vehicle" includes not only "automobiles," but means of conveyance such as trucks, boats, recreational vehicles, minivans. *Def.Trial Brief,* at 6.[1] All of these, indeed, are correctly termed "vehicles"—as are liquids and motion pictures when "vehicle" is used within particular contexts.

However, no word can be usefully understood without reference to its context, and the task of the court in construing the claims of a patent is not to ransack linguistic authorities for the purest expression of the abstract idea of a "vehicle," but to understand what the word means as used in the claims under consideration. *See Texas Instruments v. Cypress Semiconductor Corp.,* 90 F.3d 1558, 1564 (Fed.Cir.1996) ("Although the dictionary broadly defines 'conductor' as any substance that conducts an electrical charge, the patent itself belies such a broad construction.") (citing *Quantum,* 65 F.3d at 1580). Accordingly, Defendant's litany of vehicular examples, literally correct though it may be, is potentially highly misleading.

The real question, then, is not whether "vehicle" always means "automobile," but

---

**1.** Defendant has previously urged the court that "vehicle" encompasses "any moving support or container fitted or used for the conveyance of bulky objects. For example, the term 'vehicle' may also include carriages, motorcycles, sleds, tanks, or wagons." *Def.Mem. of P & A's in Supp.Mo.Summary Judgment,* October 19, 1994, at 12–13.

whether in the context of the claims to be construed the two terms are used as synonyms. *Webster's* defines "automobile" to mean "a usu[ally] four-wheeled automotive vehicle designed for passenger transportation and commonly propelled by an internal-combustion engine using a volatile fuel." Webster's Ninth New Collegiate Dictionary at 118 (1981). Defendant has put forth no compelling argument to show that as used in the reexamined claims "vehicle" necessarily means anything other than this. While it is true that everyday speech commonly distinguishes between "cars" and "trucks," this usage is neither uniform nor dispositive. The court must inquire whether "one of ordinary skill in the art" of the sort of sunshade set forth in the Patent in Suit would understand that "vehicle" necessarily encompasses not merely passenger vehicles but also, for example, "boats," as Defendant urges.

Here, the very breadth and flexibility of the "ordinary meaning" of the word "vehicle," as revealed by the range of dictionary citations Defendant has provided, require that the court make reference to the patent specification in order to determine what "vehicle" in this context properly means. The court is, after all, called upon to determine the "ordinary meaning [of the claim language] *to one of skill in the art.*" *Quantum,* 65 F.3d at 1580 (emphasis added); *see also Cypress Semiconductor,* 90 F.3d at 1564. The reexamined patent, like the original patent, is entitled a "compactly foldable *automobile* sunshade." The reexamined patent, like the original patent, refers to the use of visors that rotate in the vehicle/automobile. These two factors strongly suggest that the most appropriate construction of the word "vehicle" is that of a light, generally four-wheeled passenger conveyance. In the context of the sunshade delineated in the original Patent in Suit, the term "automobile" does not mean anything different, but designates those conveyances most commonly called cars, minivans, recreational vehicles, sport utility vehicles, and light trucks. Excluded are boats, airplanes, tanks, and so forth. Consequently, the court finds that the use of the term "vehicle" in the reexamined patent does not of itself impermissibly broaden the scope of the claims.

### 2) "Substantially continuously deformable"

Defendant argues that Plaintiff has impermissibly broadened the Patent in Suit during reexamination by substituting "substantially continuously deformable" in Claims 15 and 16 for "continuously deformable" in Claim 1. Defendant relies upon the *Quantum* decision—and that case's approval of *Ex parte Neuwirth*—for the proposition that Plaintiff has thereby necessarily broadened the scope of the claims.

Plaintiff, in response, maintains that the phrase "substantially continuously deformable" is identical in meaning to "continuously deformable." In the "real world" of the manufacture of sunshades, Plaintiff argues, there is no such thing as a perfectly "continuously deformable" material. Thus, goes the argument, all materials are at most *substantially* continuously deformable, and the revised language of the claims only makes clear what was always "implicit and inherent in the operation of the sunshade."

Defendant is clearly correct that the addition of the seemingly innocuous adverb "substantially" *can* serve to broaden the scope of the claim. In *Ex parte Neuwirth,* 229 U.S.P.Q. 71 (1985), the PTO Board of Patent Appeals invalidated a claim added during reexamination on this very ground. The Federal Circuit expressly approved this holding in *Quantum,* 65 F.3d at 1581, and in *In re Freeman,* 30 F.3d at 1464. The Federal Circuit has not, however, laid down a *per se* rule that "substantially" always broadens the scope of a claim. *Ex parte Neuwirth,* upon which Defendant relies, is readily distinguishable. That case concerned two claims that were absolutely identical, except for the addition during reexamination of new claim differing by only a single word—"substantially." "'Substantially rounded,'" the PTO Board held, "must mean something different than 'rounded' to preclude an identity between" the two claims. The addition of the "substantially rounded" claim, therefore, necessarily broadened the scope of the original claim. The Board upheld the Examiner's decision rejecting the second, new claim. *Ex parte Neuwirth,* 229 U.S.P.Q. at 72–73.

Here, by contrast, the Examiner canceled the original Claim 1 and replaced it with Claims 15 and 16, which are identical with respect to the "substantially continuously deformable" language. The court finds this difference decisive. Although in some contexts the addition of a qualifier like "substantially" can be important, the court finds that within the context of the real world art of sunshade design and manufacture, there is no "perfectly continuously deformable" material. Accordingly, Claim 1, sensibly read, never required such an interpretation. A deformable material, within the context of auto sunshades, could be at most "substantially" deformable. The addition of the adverb "substantially," therefore, does not serve to broaden the claim but merely clarifies the language of the earlier claim in accordance with what one skilled in the art of sunshades would always have understood by the term.

### 3) The use of the "visor" language

■ Reexamined claim 16 recites a "rotatably mounted" vehicle visor that "sandwiches" the sunshade to hold it in place "adjacent" the vehicle window. In the original claim, the use of the visor to hold the sunshade in place appears only in the specification and in the diagrams. No mention of it is made in the claim at all. In the original claim, the "restoring spring forces of said spring-like second material makes [sic] possible the retention of said sunshade inside a surrounding frame of a window in an automobile."

Defendant urges that the language of the original patent provides that the "restoring spring forces" furnish the exclusive mechanism by which the sunshade is mounted against an automobile window. The addition of the visor language, Defendant argues, therefore broadens the scope of the claim by providing an additional method for mounting the sunshade.

Plaintiff argues that the new language merely makes explicit what was always implicit and inherent in the original patent. In support of this distinction Plaintiff points to *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 977 (Fed.Cir.1986) for the proposition that "[r]eexamination claims that merely clarify

operation, and where relevant language was already present in specification and in original claims, are not held to broaden the scope of the original claims."

Though not without merit, Defendant's argument is, ultimately, unavailing. The language of the original patent does not, as Defendant contends, require that the "restoring spring forces" provide the exclusive means for holding the sunshade in place. Rather the "restoring spring forces" merely "makes [sic] possible the retention" of the sunshade within the automobile window. *Original Patent, Claim 1.* Exactly how it is retained, however, is not delineated in the claim—and thereby not limited by the claim language. The specification and drawings of the original patent establish that the sunshade may be retained within the automobile windshield with the use of the automobile's visors.

The specification and drawings also establish that the sunshade may be retained within automobile windows by the action of the "restoring spring forces." Neither the language of the original Claim 1 nor the specification and drawings, however, support Defendant's contention that the sunshade must be retained within the window by the exclusive agency of the "restoring spring forces." Even when the visors are used, the "restoring spring forces" do in fact "make[ ] possible" the retention of the sunshade. After all, without the "restoring spring forces," the "sunshade" is but a limp piece of fabric. The visor language in Reexamined Claim 16, therefore, merely clarifies what was already present in the original patent, and consequently does not broaden the scope of the original patent.

### 4) "Adjacent"

■ Defendant argues that the Reexamined Claims impermissibly broaden the scope of the original claims by reciting that the sunshade be placed "adjacent" a window, rather than "retained" "inside a surrounding frame of a window." "Adjacent," according to Defendant, means "lying near or close to: sometimes, contiguous, neighboring ... adjacent implies that the two objects are not widely separated, though they may not actu-

ally touch." *Defendant's Trial Brief,* at 13 (quoting *Black's Law Dictionary* ). Therefore, according to Defendant, the "adjacent" language means that the reexamined claims "would encompass sunshades which are retained inside a surrounding frame of an automobile window and would also encompass sunshades which are placed 'near or close to', but not retained inside a surrounding frame of a vehicle window." *Id.*

Defendant's argument, however, is based on its erroneous construction of the "restoring spring forces" language rejected in the preceding subsection. As explained above, the language of the original claim does not require the meaning attributed by Defendant, *viz.,* that the sunshade be retained uniquely by action of the "restoring spring forces." Rather, these "restoring spring forces" merely "make[ ] possible" the sunshade's retention within the window frame. The language of the claim leaves open the precise method of "retention," although the specification and drawings show two such methods, only one of which is the method urged by Defendant as the exclusive method. The other is the use of the visors. Defendant does not explain how it would be possible to use the automobile's visors—as provided in the original patent—without placing the sunshade "adjacent" the window. This being so, the reexamined claims' "adjacent" language does not broaden the scope of the original claim.

**Conclusion**

In sum, the court rejects the hypertechnical constructions urged by Defendant as unsuited to the type of device at issue in this case. The court finds as a matter of law that the claims of the original patent were not broadened during reexamination. The court having found that the claims were not broadened during reexamination, the claims are by definition necessarily "identical." *See In re Freeman,* 30 F.3d at 1464.

### III. Interpretation of the Claim Language and Scope

The parties, in their Proposed Pre–Trial Conference Order, have identified a number of phrases in the claims calling for some judicial construction. The court finds as follows:

#### 1) "Vehicle"

As explained above, "vehicle" as used in the claims refers to a light, generally four-wheeled passenger conveyances commonly called cars, minivans, recreational vehicles, sport utility vehicles, and light trucks. "Vehicle" in this usage is a synonym for "automobile." The "vehicle" is used as an environment for the elements of the claim.

#### (2) "In fixed relation adjacent a surface of said vehicle window"

This phrase means that relative to one another, the sunshade and the window do not move when the sunshade is placed in use. The sunshade is placed "adjacent" the window, meaning that it is placed in close proximity, or next to the window. It does not mean that the sunshade necessarily touches the window, but that it comes close to doing so. The sunshade may touch or be next to only a portion of the window and still be "adjacent."

#### 3) "Substantially continuously deformable to a predetermined contour of said vehicle window"

This phrase means that the perimeter of the sunshade is capable of bending ("deformable") so as to fit a predetermined contour of a vehicle window. The sunshade is deformable throughout the perimeter. However, it is not "perfectly deformable" but only "substantially" deformable. The phrase does not mean that in operation the sunshade necessarily conforms to the entire periphery of the vehicle window.

#### 4) "Said visor being adjustably rotated into contiguous relation with said sheet rear surface"

This phrase means that the vehicle visor is rotated so that it contacts the rear surface of the sunshade. When in operation, the visor is "contiguous" in that it lies flat against the rear surface of the sunshade, touching the sunshade.

#### 5) "Mounted in an open configuration to said vehicle window frame"

When twisted and folded for storage, the sunshade is in a "closed configuration." Consequently, the above bolded phrase means

that when untwisted and unfolded, the sunshade is in its "open configuration." When held against the window, whether by the use of visors or otherwise, the sunshade is "mounted." Contrary to Defendant's contention, "mounting" does not require "fastening." Just as one can "mount" a horse without being "fastened" to the horse, so there is no requirement that the sunshade be "fastened" to the window. There must merely be some means of holding the sunshade against at least a portion of the vehicle window.

### 6) Scope of the Claims

Lastly, under "Defendant's Issue of Law" the Proposed Pretrial Conference Order identifies for determination by this court the general "scope of the claims of the Patent in Suit." Defendant's Trial Brief makes clear that Defendant understands this issue to be identical to the question of the broadening of the scope of the claims. As this issue has been dealt with at length above, the court will not recite its findings again.

The court having decided those issues raised by the parties and determined by the court to be proper *Markman* issues for pretrial resolution, the foregoing determinations of law shall form the basis for a revised Pre–Trial Conference to be held on February 3, 1997, at 10:00 a.m.

So ordered.