**SKINDER–STRAUSS ASSOCIATES, by its General Partners, Plaintiff,**

v.

**MASSACHUSETTS CONTINUING LEGAL EDUCATION, INC., Defendant.**

**Civ. A. No. 94–10868–PBS.**

United States District Court, D. Massachusetts.

Nov. 8, 1994.

Ian Crawford, Douglas W. Salvesen, J. Owen Todd, Todd & Weld, Howard J. Castleman, Paul B. Galvani, Ropes & Gray, Boston, MA, for Skinder–Strauss Associates.

Ian Crawford, J. Owen Todd, Boston, MA, for Michael Skinder, Kenneth M. Strauss, Thomas S. Strauss, Andrew W. Strauss, Trudi S. Krivitzky and Karen J. Harris.

Howard J. Castleman, Paul B. Galvani, Ropes & Gray, Boston, MA, for Massachusetts Continuing Legal Educ., Inc.

## MEMORANDUM AND ORDER

SARIS, District Judge.

Plaintiff Skinder–Strauss Associates ("Skinder") brings this civil suit against Massachusetts Continuing Legal Education, Inc. ("MCLE") for copyright infringement as well as Lanham Act and state and common law violations. MCLE has counterclaimed, alleging that this lawsuit is "objectively baseless" and in violation of the Sherman Antitrust Act and Mass.Gen.L. ch. 93A.

Now before the Court is Skinder's Motion to Dismiss MCLE's counterclaims under Fed.R.Civ.P. 12(b)(6). For the reasons stated below, the Court **DENIES** the motion. The Court has concluded, however, that it is proper to sever the counterclaims and to stay all discovery on the counterclaims until the underlying suit is resolved.

## I. BACKGROUND

Skinder has published for a number of years a volume known in Massachusetts as the "Lawyer's Diary." Skinder states that this diary contains information useful to lawyers, such as information about courts, judges, court reporters, and bar associations, along with a calendar and a Bar Directory with the names and addresses of selected law firms and attorneys in Massachusetts. In November, 1993, MCLE published a similar "1994 Massachusetts Legal Directory." Skinder then brought this suit against MCLE, alleging that the Legal Directory infringes Skinder's copyright in the Lawyer's Diary. Among other things, Skinder alleges that it included in its directory certain false information, called "seeds," to detect unauthorized copying, and that MCLE copied Skinder's data, including these "seeds."

MCLE counterclaimed against Skinder, alleging that the copyright lawsuit was brought solely to destroy competition from MCLE and therefore violated the Sherman Antitrust Act and Mass.Gen.L. ch. 93A. MCLE acknowledges that, under the *Noerr–Pennington* doctrine, the act of filing a lawsuit generally cannot subject a person to antitrust liability, but MCLE contends that Skinder's copyright lawsuit falls within the "sham litigation" exception to this doctrine.

## II. ANALYSIS

### A. *Motion to Dismiss Standard*

The standard for dismissal under Fed. R.Civ.P. 12(b)(6) is clear: a complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). The court must accept the factual averments of the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Coyne v. City of Somerville*, 972 F.2d 440, 442–43 (1st Cir.1992).

### B. *Plaintiff's Contentions*

As Skinder correctly notes, under the so-called *Noerr–Pennington* doctrine, "[t]hose who petition government for redress are generally immune from antitrust liability." *Professional Real Estate Investors v. Columbia Pictures*, —— U.S. ——, ——, 113 S.Ct. 1920, 1926, 123 L.Ed.2d 611 (1993); *see also Eastern R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). The Supreme Court has extended this immunity to those who bring petitions or claims before administrative agencies and the courts. Excepted from this immunity, however, are any "sham" petitioning activities, because the Court determined that antitrust restraints should apply to any petitioning activity that, although "ostensibly directed toward influencing governmental action, is a mere sham to cover ... an attempt to interfere directly with the business relations of a competitor." *Noerr*, 365 U.S. at 144, 81 S.Ct. at 533.

MCLE alleges in its counterclaims that Skinder's copyright lawsuit falls within this "sham" exception to immunity from antitrust liability. Skinder in turn argues that

MCLE's counterclaims must be dismissed because there can be no claim of "sham litigation" on the basis of a single lawsuit. Rather, Skinder contends, the challenger must show a *pattern* of baseless litigation or at least some alleged misconduct *other* than the filing of the lawsuit. Because MCLE bases its counterclaims solely on the act of filing the lawsuit, Skinder asserts the counterclaims fail to state a claim and must be dismissed.

The Court cannot agree with Skinder's interpretation of the "sham" exception to the *Noerr–Pennington* doctrine. Although some earlier cases did refer to a "pattern" of improper litigation, the most recent Supreme Court case on this subject, which carefully undertakes to "outline a two-part definition of 'sham' litigation," does not mention any requirement that a "pattern" of litigation be found or that other misconduct be proved before the label "sham" can be applied. *Professional Real Estate Investors,* —— U.S. at —— – ——, 113 S.Ct. at 1928–29. On the contrary, the Court seems to assume that a single lawsuit can indeed amount to sham litigation under *Noerr–Pennington:*

> We now outline a two-part definition of "sham" litigation. First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr,* and an antitrust claim premised on the sham exception must fail. Only if the challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals an attempt to interfere *directly* with the business relationships of a competitor through the use of governmental *process*— as opposed to the *outcome* of that process—as an anti-competitive weapon.

*Professional Real Estate Investors,* —— U.S. at ——, 113 S.Ct. at 1928 (internal citations, quotations and footnotes omitted). Indeed, the Supreme Court's refusal to require a pattern of baseless repetitive claims or other misconduct is all the more telling given that the Ninth Circuit Court of Appeals, in the underlying case, emphasized that "a single meritless suit" may be sufficient to defeat *Noerr–Pennington* immunity. *Columbia Pictures Indust., Inc. v. Professional Real Estate Investors, Inc.,* 944 F.2d 1525, 1529–30 (9th Cir.1991). If the Supreme Court understood the *Noerr–Pennington* doctrine in the manner Skinder suggests, that is, if the doctrine required a challenger to prove a pattern of baseless litigation or at least a connection between a single lawsuit and some other misconduct before the "sham" exception applied, the Court surely would have discussed these additional requirements as part of the comprehensive two-tiered approach set out in *Professional Real Estate Investors. See also Professional Real Estate Investors,* —— U.S. at ——, 113 S.Ct. at 1932 ("The label 'sham' is appropriately applied to a case, or a series of cases . . .") (Stevens, J., concurring).

Other courts, in cases decided after *Professional Real Estate Investors,* have determined that the sham exception can apply to single lawsuits. *See, e.g., USS–POSCO Indust. v. Contra Costa Cty. Bldg. & Const.,* 31 F.3d 800, 810–11 (9th Cir.1994) (comparing *Professional Real Estate Investors,* which "provides a strict two-step analysis to assess whether a *single action* constitutes sham petitioning" with earlier Supreme Court cases analyzing "a *whole series* of legal proceedings") (emphasis added); *Carroll Touch, Inc. v. Electro Mechanical Systems, Inc.,* 15 F.3d 1573, 1582 (Fed.Cir.1993) (citing *Professional Real Estate Investors* and applying sham exception to case involving single lawsuit).

■ This court therefore concludes that the sham exception can be invoked on the basis of a single lawsuit, without proof of any other misconduct, if the lawsuit meets the two-part test established in *Professional Real Estate Investors.* Because MCLE's counterclaims allege that the lawsuit filed by Skinder is objectively baseless and conceals an attempt to interfere directly with the business relationships of a competitor, the counterclaims adequately state a claim and should not be dismissed under Fed.R.Civ.P. 12(b)(6).

Skinder's additional assertion, that a heightened pleading requirement applies to cases brought under the sham exception, is not persuasive. Although some cases in other Circuits have required greater specificity in pleading, *see, e.g., Letica Corp. v. Sweetheart Cup Co., Inc.,* 790 F.Supp. 702, 705 (E.D.Mich.1992), the Federal Rules of Civil Procedure do not contain such a requirement and the Supreme Court has recently expressed disapproval of judicial attempts to heighten pleading requirements in other contexts. *See Leatherman v. Tarrant Cty. Narcotics,* —— U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (holding that no heightened pleading requirements apply to claims against municipalities under § 1983).

### C. *Chapter 93A Claim*

MCLE's allegation that Skinder filed a baseless lawsuit against it for anti-competitive purposes states a claim under Mass. Gen.L. ch. 93A. *See Refuse & Environmental Systems v. Industrial Servs. of America,* 932 F.2d 37, 42–43 (1st Cir.1991); *DataComm. Interface Inc. v. Computerworld, Inc.,* 396 Mass. 760, 780, 489 N.E.2d 185 (1986). The court will therefore deny Skinder's motion to dismiss this counterclaim.

### D. *Decision to Sever and Stay Counterclaims*

Having determined that MCLE's counterclaims should not be dismissed, the Court nevertheless concludes that all proceedings on the counterclaims should be stayed until after resolution of the copyright infringement action. This procedure will avoid a waste of judicial and party resources on the question of Skinder's intent in filing the lawsuit, which is relevant only to step two of the two-part sham analysis.

If MCLE files and ultimately succeeds on a summary judgment motion on the copyright action, this court will then have a record for determining whether the challenged litigation is objectively meritless. *See Professional Real Estate Investors,* —— U.S. at ——, 113 S.Ct. at 1930 (a probable cause determination can irrefutably demonstrate that an antitrust plaintiff has not proved the objective prong of the sham exception). If

MCLE can establish that, as a matter of law, the first prong is established, it can then pursue discovery on step two: Skinder's intent. If, on the other hand, Skinder survives a summary judgment motion or the court concludes that the suit was not objectively meritless, then Skinder is entitled to judgment in its favor on the counterclaims and no further proceedings are needed. *Id.* (where copyright owner would reasonably have believed it had some chance of winning an infringement suit, the antitrust counterclaim plaintiff, even though it prevailed on its summary judgment motion, failed to establish the objective prong and no discovery into economic motivation was needed).

### ORDER

For the foregoing reasons, it is hereby **ORDERED:**

(1) Plaintiff's Motion to Dismiss Counterclaims (Docket No. 7) is denied.

(2) All discovery on Defendant's counterclaims is stayed until resolution of the underlying action or until further order of the court.