Thermalloy v. Aavid Engineering     CV-93-16-JD   08/15/96 P

UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE


Thermalloy Incorporated

        v.                              Civil No. 93-16-JD

Aavid Engineering, Inc.


                              O R D E R


        By memorandum order of March 15, 1996, the court granted

defendant Aavid Engineering, Inc.'s motion for summary judgment

on the ground that plaintiff Thermalloy Inc.'s patent, Letters

Patent No. 4,884,331, Method for Manufacturing Heat Sink

Apparatus ("the '331 patent"), was invalid.  Thermalloy Inc. v.

Aavid Engineering, Inc., No. 93-16-JD, slip op. at 18 (D.N.H.

March 15, 1996).  The court denied Aavid's request for attorney

fees under 35 U.S.C. § 285 and, finding that the order resolved

the dispute pending between the parties, the clerk was ordered to

close the case.  Id. at 18-19.  Final judgment was entered on

March 18, 1996.

        On April 8, 1996, Thermalloy timely filed a notice of appeal

to the Court of Appeals for the Federal Circuit.  On April 23,

1996, Aavid filed a notice of cross-appeal.  The clerk of this

court certified the record to the Federal Circuit soon

thereafter.

On May 31, 1996, the Federal Circuit (Mayer, J.), stayed the appeal to permit the court to entertain Thermalloy's motion to amend the judgment under Rule 60(a). Thermalloy Inc. v. Aavid Engineering, Nos. 96-1307, 1328, slip op. at 2-3 (Fed. Cir. May 31, 1996).[1] Accordingly, the court may now consider Thermalloy's motion (document no. 61), to which Aavid objects (document nos. 68 and 69). In the alternative, Thermalloy requests that the court enter partial final judgment under Rule 54(b) on the patent invalidity ruling and thereby ripen the issue for appellate review. Aavid does not object to this alternative request for relief.

## Background

In its answer to the first amended complaint, Aavid asserted that Thermalloy, its direct competitor in the cross-cut fin heat sink industry, filed and maintained this action in violation of

---

[1]The Federal Circuit stated:

> Although the district court docket indicates that the case before that court is "closed," it is unclear whether the district court intends to take any further action with respect to Aavid's antitrust claim. Therefore, we deem the better course is to stay the appeal to allow the district court to rule on the Rule 60(a) motion.

Thermalloy Inc., Nos. 96-1307, 1328, slip op. at 2.

2

the Sherman Act, 15 U.S.C. § 2, and the Clayton Act, 15 U.S.C. § 15. See Answer at ¶¶ 19, 20. In particular, Aavid alleged:

> Thermalloy has been aware, since at least the beginning of February, 1993, of prior art which renders [the '331 patent] invalid given the scope of the claims that Thermalloy has asserted for such patent against Aavid Engineering in this suit. Thermalloy knows or reasonably should know that [the '331 patent] is invalid and not enforceable, and should not have been issued by the Patent and Trademark Office [and] . . . that the claims that it has asserted against Aavid Engineering in this suit are without merit, and the suit never should have been filed . . . . However, instead of promptly dismissing its suit against Aavid Engineering, Thermalloy has continued to assert [the patent] . . . in an unlawful attempt to use this patent, which Thermalloy knows or reasonably should know is invalid, to monopolize the market in the United States and elsewhere for cross-cut fin heat sinks. Thermalloy's continued prosecution of this suit against Aavid Engineering, knowing that the patent in suit is not valid or enforceable and is not entitled to the scope asserted by Thermalloy in this suit, calls into question Thermalloy's motives and good faith in bringing the suit against Aavid Engineering in the first place.
>
> Thermalloy's continued prosecution of the present suit against Aavid Engineering has been at substantial cost to Aavid Engineering, and for what are believed to be unlawful, anti-competitive reasons rather than any lawful enforcement of legitimate patent rights.

Id. at ¶¶ 21-22. As noted by the Federal Circuit, the court has never explicitly addressed the merits of this counterclaim. However, the court addressed some of the allegations raised by the antitrust counterclaim in the context of Aavid's motion for attorney fees under 35 U.S.C. § 285, ruling that "Aavid has failed to adduce specific evidence to support its contention that

3

Thermalloy breached its duty of good faith in the reexamination proceedings or otherwise acted in bad faith." Thermalloy Inc., No. 93-16-JD, slip op. at 18 (citations omitted).

## Discussion

Thermalloy argues that the March 18, 1996, entry of final judgment represents the court's considered, if not explicitly stated, decision on all pending claims, including the antitrust counterclaim. See Thermalloy's Memorandum in Support of Motion to Amend Judgment ("Thermalloy's Memorandum") at 1-3. Relying on the court's attorney fee rulings, Thermalloy reasons that, by "necessary implication," the "absence of bad faith in the reexamination process or at any other time in these proceedings precludes any basis for Aavid's antitrust counterclaim." Id. at 3.

Aavid responds that the court's attorney fee rulings were based solely on Thermalloy's conduct in connection with the reexamination proceedings and, thus, do not control the distinct question presented by its counterclaim, i.e., whether Thermalloy engaged in anticompetitive conduct relative to the prosecution of the original '331 patent, including the filing of the instant action. See Aavid's Memorandum in Opposition to Motion to Amend Judgment ("Aavid's Memorandum") at 5-6. Aavid also asserts,

4

without elaboration, that the "antitrust counterclaim involves separate facts and requires proofs different than the facts and proofs considered by this Court on Aavid's motion for summary judgment." Id. at 6. Finally, Aavid suggests that the existing record cannot support resolution of the antitrust counterclaim and, therefore, to do so would unfairly deprive it of an opportunity to litigate its case. See id.

The court recognizes that its March 15, 1996, order and the subsequent entry of final judgment created the ambiguity noted by the Federal Circuit and the parties. To clarify the record the court grants Thermalloy's motion to amend its entry of final judgment as hereinafter provided:

## A. Plaintiffs Generally Are Immune From Antitrust Liability For Litigation-Related Conduct

As an initial matter, it is not unusual for litigants defending intellectual property cases to turn around and allege that the plaintiff's conduct in bringing the infringement action is "part of a scheme or plan to restrain trade in and monopolize the [relevant] market in violation of federal antitrust laws." Carroll Touch, Inc. v. Electro Mechanical Sys, Inc., 15 F.3d 1573, 1581 (Fed. Cir. 1993) (patent infringement); see also Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 113 S. Ct. 1920, 1923-24 (1993) (copyright infringement). However,

5

under what is known as the Noerr-Pennington doctrine, "[t]hose who petition government for redress are generally immune from antitrust liability" because, inter alia, Congress did not intend for its regulation of trade to compromise the First Amendment right to petition the government for relief. Real Estate Investors, 113 S. Ct. 1926 (citing Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961)). "The Supreme Court has extended the immunity to those who bring petitions or claims before administrative agencies and the courts." Skinder-Strauss Assocs. v. Massachusetts Continuing Legal Education, Inc., 870 F. Supp. 8, 9 (D. Mass. 1994); accord Real Estate Investors, 113 S. Ct. at 1926 (citing California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972)).

The Noerr-Pennington antitrust immunity is not absolute; litigants may proceed with antitrust counterclaims if they "pierce" the presumptive immunity by establishing that the initial lawsuit is a sham. Carroll Touch, 15 F.3d at 1583. The Supreme Court, which in the past has defined a sham lawsuit as any "private action that is not genuinely aimed at procuring favorable government action," Allied Tube & Conduit Corp. v. Indian Head, Inc., 486 U.S. 492, 500 n. 4 (1988), recently has

announced a two-part inquiry to determine whether the sham

exception strips a given case of its antitrust immunity:

> First, the lawsuit must be objectively baseless in the
> sense that no reasonable litigant could realistically
> expect success on the merits.  If an objective litigant
> could conclude that the suit is reasonably calculated
> to elicit a favorable outcome, the suit is immunized
> under Noerr, and an antitrust claim premised on the
> sham exception must fail.  Only if a challenged
> litigation is objectively meritless may a court examine
> the litigant's subjective motivation.  Under this
> second part of our definition of sham, the court should
> focus on whether the baseless lawsuit conceals "an
> attempt to interfere directly with the business
> relationships of a competitor," through the "use [of]
> the governmental process -- as opposed to the outcome
> of that process -- as an anticompetitive weapon."  This
> two-tiered process requires the plaintiff to disprove
> the challenged lawsuit's legal viability before the
> court will entertain evidence of the suit's economic
> viability.  Of course, even if a plaintiff who defeats
> the defendant's claim to Noerr immunity by
> demonstrating both the objective and the subjective
> components of a sham must still prove a substantive
> antitrust violation.  Proof of a sham merely deprives
> the defendant of immunity; it does not relieve the
> plaintiff of the obligation to establish all other
> elements of his claim.

Real Estate Investors, 113 S. Ct. at 1928 (internal citations

omitted; emphasis in original).  Under this standard, "[t]he

existence of probable cause to institute legal proceedings

precludes a finding than an antitrust defendant has engaged in

sham litigation," and, for this reason, "a proper probable cause

determination irrefutably demonstrates that an antitrust

plaintiff has not proved the objective prong of the sham

exception and that the defendant is accordingly entitled to Noerr

7

immunity." Id. at 1929-30 (emphasis supplied).  Although the subjective prong necessarily requires a fact-intensive examination of the antitrust defendant's motivation, the court, once familiar with the underlying proceedings, may make a probable cause determination under the objective prong as a matter of law.  See Real Estate Investors, 113 S. Ct. at 1930 ("Where, as here, there is no dispute over the predicate facts of the underlying legal proceeding, a court may decide probable cause as a matter of law.") (citing Director General v. Kastenbaum, 263 U.S. 25, 28 (1923) ("The question is not whether [the antitrust defendant] thought the facts to constitute probable cause, but whether the court thinks they did.")); accord Skinder-Strauss, 870 F. Supp. at 11 (if defendant/antitrust plaintiff "files and ultimately succeeds on a summary judgment motion on the copyright action, this court will then have a record for determining whether the challenged litigation is objectively meritless").  Finally, the Supreme Court has cautioned that even when

> the antitrust defendant has lost the underlying litigation, a court must "resist the understandable temptation to engage in post hoc reasoning by concluding" that an ultimately unsuccessful "action must have been unreasonable or without foundation." The court must remember that "[e]ven when the law or the facts may appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit."

8

<u>Real Estate Investors</u>, 113 S. Ct. at 1928, n. 5 (citations omitted)


<u>B.   The Antitrust Immunity Issue is Properly Before the Court</u>

Aavid argues that "[t]o accept Thermalloy's position would impermissible deny Aavid any opportunity to present its antitrust claim."  Aavid's Memorandum at 6.  It is true that Aavid has not briefed the instant question of whether "a reasonable [patent] owner in [Thermalloy's] position could have believed that it has some chance of winning an infringement suit."  See <u>Real Estate Investors</u>, 113 S. Ct. at 1930.  Ordinarily, a party's failure to brief the viability of a counterclaim and submit supporting materials would preclude the court from entering summary judgment <u>sua</u> <u>sponte</u> against that party because

> [t]wo conditions must be satisfied before a court may grant summary judgment <u>sua</u> <u>sponte</u>:  (1) "the discovery phase must be sufficiently advanced" to enable both the court and litigants to accurately determine whether there is a genuine issue of material fact; and (2) the party who faces the prospect of the granting of summary judgment <u>sua</u> <u>sponte</u> must be on notice "`to bring forth all of its evidence on the essential elements of the critical claim or defense.'"

<u>Brooks v. FDIC</u>, No. 92-418-JD, slip op. at 6-7 (D.N.H. March 3, 1994) (quoting <u>Stella v. Town of Tewksbury</u>, 4 F.3d 53, 55 (1st Cir. 1993); <u>Jardines Bacata, Ltd. v. Diaz-Marquez</u>, 878 F.2d 1555, 1561 (1st Cir. 1989)); <u>see</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477

9

U.S. 317, 326 (1986). The First Circuit does not require trial courts to issue "a formal document called `notice' or . . . say the words `you are on notice'" or explicitly tell the party that the court is thinking about ordering summary judgment <u>sua</u> <u>sponte</u>. <u>National Expositions, Inc. v. Crowly Maritime Corp.</u>, 824 F.2d 131, 133 (1st Cir. 1987). Rather, the crucial inquiry is "whether, given the procedural circumstances of the case, `the original movant . . . has had <u>an adequate opportunity</u> to show that there is a genuine issue and that his opponent is not entitled to judgment as a matter of law.'" <u>Id.</u> (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure §2720 at 34 (1983)); <u>see</u> <u>also</u> <u>Jardines Bacata, Ltd.</u>, 878 F.2d at 1561 (adequate notice where "losing party had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward").

This case is prime for entry of summary judgment <u>sua</u> <u>sponte</u> on Aavid's antitrust counterclaim on Noerr-Pennington immunity grounds. The parties have presented, and the court has considered, extensive legal argument and supporting materials on the viability of Thermalloy's infringement claim in the context of Aavid's successful motion for summary judgment. <u>See</u> <u>generally</u> <u>Thermalloy, Inc.</u>, No. 93-16-JD, slip op. (D.N.H. March

10

15, 1996).[2]  The dispute resolved by that motion, <u>i.e.</u>, whether Thermalloy presented a triable claim of patent infringement, turned on the same legal and factual issues germane to the antitrust immunity issue, <u>i.e.</u>, whether Thermalloy's claim was objectively meritless.  Thus, Aavid plainly has enjoyed a full opportunity "to put its best foot forward" behind the position that Thermalloy's allegations of infringement lacked substantive merit.  <u>See</u> <u>Jardines Bacata, Ltd.</u>, 878 F.2d at 1561.  Moreover, the court, having already resolved the merits of the Thermalloy's infringement claim, is in an unusually well-informed position to determine whether the claim was not only unsuccessful but actually meritless.  <u>See</u> <u>Real Estate Investors</u>, 113 S. Ct. at 1930 (where record adequate, court may announce as a matter of law a probable cause determination under objective prong); <u>Skinder-Strauss</u>, 870 F. Supp. at 11 (indicating that court would

_____

[2]The court notes that Aavid supported its motion for summary judgment with extensive and, perhaps, excessive legal memoranda. <u>See</u>, <u>e.g.</u>, Memorandum in Support of Aavid's Motion for Summary Judgment (document no. 47; 38 pages and appendix); Aavid's Reply in Support of Motion for Summary Judgment (document no. 53; 30 pages and appendix); Aavid's Supplemental Reply Memorandum in Support of its Motion for Summary Judgment (document no. 54; 3 pages and case authority); Aavid's Surreply to Thermalloy's Response to Aavid's Supplemental Reply Memorandum (document no. 56; 4 pages but no attachments).  The court is convinced that these seventy-five pages contain Aavid's strongest arguments against the validity of Thermalloy's infringement claim.

11

be capable of ruling on antitrust immunity question if and when infringement claim is defeated on summary judgment).

## C.    Thermalloy Is Entitled to Antitrust Immunity

Thermalloy, like all plaintiffs, is presumptively immune from any counterclaim alleging that its '331 patent infringement prosecution constitutes an anticompetitive practice actionable under the federal antitrust laws.  The court's finding of patent invalidity under Rule 56, although dispositive of Thermalloy's infringement action, does not strip the lawsuit of this immunity.  Instead, to proceed with the antitrust counterclaim Aavid must defeat this immunity by satisfying both the objective and the subjective components of the sham exception.

The court finds that Aavid cannot as a matter of law satisfy the objective prong.  At the time this action was filed, Thermalloy held a patent to a device which was similar in design and function to Aavid's allegedly infringing product.  During the discovery process Aavid presented prior art which called into question the validity of the '331 patent and, following transfer to this judicial district, Thermalloy asked the court to stay the litigation while the Patent and Trademark Office ("PTO") reexamined the patent in light of the newly discovered art.  The reexamination process yielded a patent which differed in key

12

respects from the original '331 patent.  The parties reacted to the reexamination proceedings and, following the submission of unusually extensive memoranda, see supra note 2, the court essentially adopted Aavid's position that the reexamined patent was invalid.  However, the ruling on summary judgment was neither obvious nor foreordained: the motion was under consideration for more than six months and the court ultimately announced its decision in a nineteen-page memorandum order.  Based on its review of the pleadings considered in conjunction with the dispositive motion as well as the overall record and its familiarity with the procedural history of the case, the court finds that at all relevant times this was a meritorious, albeit ultimately unsuccessful, lawsuit.  Accordingly, "an objective litigant could conclude that the suit [was] reasonably calculated to elicit a favorable outcome," Real Estate Investors, 113 S. Ct. at 1928), and, as a result, Aavid cannot as a matter of law defeat Thermalloy's Noerr-Pennington antitrust immunity.[3]  The

_____

[3]Given Aavid's inability to satisfy the objective prong of the sham exception to antitrust immunity, the court need not consider Thermalloy's argument under the subjective prong that Aavid's antitrust counterclaim necessarily is imperiled by the March 15, 1996, attorney fee finding that Thermalloy did not act in bad faith.

court grants summary judgment <u>sua</u> <u>sponte</u> to Thermalloy on Aavid's antitrust counterclaim.[4]


## Conclusion

The court grants summary judgment <u>sua</u> <u>sponte</u> to Thermalloy on Aavid's antitrust counterclaim.

The court strikes the final two sentences from its March 15, 1996, order, <u>i.e.</u>, "This order resolves the dispute pending between the parties.  The clerk shall enter final judgment and close this case."

The court orders the clerk to enter an amended final judgment consistent with this order.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

August 15, 1996
cc:  Jack Alton Kanz, Esquire
     Charles A. Szypszak, Esquire
     Alan D. Rosenthal, Esquire
     John Skenyon, Esquire
     Michael M. Lonergan, Esquire
     Martin B. Pavane, Esquire

_____

[4]Under the circumstances of this case, Aavid's ongoing effort to assert the antitrust counterclaim even after it has prevailed on the merits of the principal claim might well cause one to wonder about its motivations.  The record is devoid of evidence or even specific allegations to support a finding that Thermalloy's litigation lacked objective merit and was undertaken in bad faith -- the twin showings necessary to defeat Thermalloy's presumptive immunity.

14