ADC TELECOMMUNICATIONS, INC., Plaintiff,

v.

ALCOA FUJIKURA LTD, Defendant.

TELECT, INC., Plaintiff,

v.

ADC TELECOMMUNICATIONS, INC., Defendant.

Civil No. 97–1732 (DSD/JMM).

United States District Court, D. Minnesota.

July 15, 1998.

William Z. Pentelovitch and Maslon, Edelman, Borman & Brand, Minneapolis, MN, Mark W. Hendricksen and Wells, St. John, Roberts, Gregory & Matkin, Spokane, WA, for Telect, Inc.

Alan G. Carlson, Philip P. Caspers, Timothy A. Lindquist and Merchant & Gould, Minneapolis, MN, for ADC Telecommunications, Inc.

## ORDER

DOTY, District Judge.

This matter is before the court on the motion of plaintiff Telect, Inc., for claim interpretation and summary judgment.[1] Based on a review of the file, record and proceedings herein, the court denies plaintiff's motion.

## BACKGROUND

Telect, Inc. ("Telect") is a Washington corporation that manufactures and sells telecommunications equipment, including optical fiber distribution frames. ADC Telecommunications, Inc. ("ADC") is a Minnesota corporation that also manufactures and distributes telecommunications equipment. ADC is the owner of United States Patent No. Re. 34,955, as amended by reexamination certificate B1 Re. 34,955, which is entitled "Optical Fiber Distribution Frame." The patent is directed to a frame having a plurality of cabinets for connecting and storing fiber cables. This matter involves the alleged invalidity of the reexamined claims of the patent.[2]

---

1. Alcoa Fujikura Ltd. also moved for summary judgment against ADC Telecommunications, Inc., but prior to the hearing on the motion entered into a stipulation for entry of final judgment.

2. The patent refers to an "adaptor." The parties have used different spellings for the term. Because "adapter" is the preferred spelling to "adaptor," the court has uniformly used the preferred spelling throughout this order.

ADC filed its original patent application in July 1989. On February 26, 1991, ADC was issued U.S. Patent No. 4,995,688 ("the '688 patent") which contained eleven claims. On February 26, 1993, ADC petitioned the U.S. Patent Office to reissue the original patent to broaden the scope of the original patent to include claims 12 through 19. In its reissue application, ADC submitted new claims 12 and 15 which read as follows:

12. An optical fiber distribution frame, comprising:

a frame member having walls defining a frame interior, said frame member having a plurality of cabinet attachment locations;

a plurality of cabinets sized to be received within said frame interior;

said plurality of cabinets including at least one connector cabinet having a panel accessible at both a rear and a forward face of said panel, said cabinet including a plurality of fiber optic connectors carried on said panel, each of said connectors including means for receiving and mounting optical fibers to said connectors with a first fiber extending to said rear face and with a second fiber extending to said forward face and with said fibers connected in optical alignment;

wherein said connectors are provided with means for holding said plurality of fibers at a predetermined angle to said panel with said angle selected to be less than 90 degrees.

15. An optical fiber distribution frame, comprising:

a frame member having walls defining a frame interior, said frame member having a plurality of cabinet attachment locations;

a plurality of cabinets sized to be received within said frame interior;

said plurality of cabinets including at least one connector cabinet having a panel accessible through both a rear and a forward face of said connector cabinet including a plurality of fiber optic connectors carried on said panel, each of said connectors including means for receiving and mounting optical fibers to said connector with a first fiber extending through said rear face and with a second fiber extending through said forward face with said fibers connected in optical alignment;

wherein said connectors are provided with means for holding said plurality of fibers at a predetermined angle to said panel with said angle selected to be less than 90 degrees.

On December 21, 1993, the patent examiner allowed all 19 claims of the reissue application, including new claims 12 through 19. On March 1, 1994, ADC filed an amendment to amend the claims of the reissue application, including claims 12 and 15. As amended, claims 12 and 15 read as follows, with the underlined portion identifying additions to the originally submitted claims and the bracketed portions identifying deletions to the original claims:

12. An optical fiber distribution frame, comprising:

a [frame member having walls defining a frame interior, said frame member] *structure* having a plurality of cabinet attachment locations;

a plurality of cabinets *attached to said structure at said plurality of attachment location* [sized to be received within said frame interior];

said plurality of cabinets including at least one connector cabinet having a panel accessible at both a rear and a forward face of said panel, said cabinet including a plurality of fiber optic connectors carried on said panel, each of said *fiber optic* connectors including means for receiving and mounting optical fibers to said *fiber optic* connectors with a first fiber extending to said rear face and with a second fiber extending to said forward face and with said fibers connected in optical alignment;

wherein said *fiber optic* connectors are provided with means for holding said plurality of fibers at a predetermined angle to *a plane of said forward face* [said panel] with said angle selected to be less than 90 degrees.

15. An optical fiber distribution frame, comprising:

a *structure* [frame member having walls defining a frame interior, said frame member] having a plurality of cabinet attachment locations;

a plurality of cabinets *attached to said structure at said plurality of attachment locations* [sized to be received within said frame interior];

said plurality of cabinets including at least one connector cabinet having a panel accessible through both a rear and a forward face of said connector cabinet including a plurality of fiber optic connectors carried on said panel, each of said *fiber optic* connectors including means for receiving and mounting optical fibers to said *fiber optic* connector with a first fiber extending through said rear face and with a second fiber extending through said forward face with said fibers connected in optical alignment;

wherein said *fiber optic* connectors are provided with means for holding said plurality of fibers at a predetermined angle to *a plane of said forward face* [said panel] with said angle selected to be less than 90 degrees.

ADC explained to the Patent Office that the amendments were being made to avoid the following restriction:

2. In each of the independent claims, the claims are amended to recite that the connectors are secured to the cabinet to hold the fibers at a predetermined angle to a plane of the forward face (as opposed to holding them at a predetermined angle to the panel). As mentioned, it was believed this change is necessary to prevent an unwarranted limiting interpretation of the claims which would not cover a connector having a forward panel which is provided with a plurality of bends such that the fibers could be secured at 90 degrees to the immediate area of the panel but still be at an angle with respect to the forward plane of the cabinet.

Affidavit of Timothy A. Lindquist, Ex. 8 at 00276–00277. On May 30, 1995, the Patent Office reissued U.S. Patent No. Re. 34,955 ("the '955 patent").

Upon issuance of the '955 patent, ADC sought to enforce the patent against alleged infringers, including Siecor Corporation ("Siecor"). In response to allegations of infringement, Siecor argued that the claims of the '955 patent were invalid over various prior art references, including U.S. Patent No. 4,824,196 to Bylander ("the Bylander patent"). On January 16, 1996, ADC requested the Patent Office to reexamine the ADC Reissue Patent Re. 34,955, based upon the prior patents, including the Bylander patent. ADC submitted a Proposed Amendment, requesting the amendment of claims 12 and 15 and the addition of claims 20 through 29.

Claims 12 and 15, as stated in the request for reexamination, read as follows with the underlined portion identifying additions and the bracketed portions identifying deletions:

12. An optical fiber distribution frame, comprising:

a structure having a plurality of cabinet attachment locations;

a plurality of cabinets attached to said structure at said plurality ˙of attachment [location] *locations;*

said plurality of cabinets including at least one connector cabinet having a panel accessible at both a rear and a forward face of said panel, *the panel having left and right fields adjacent left and right sides, respectively, of said cabinet,* said cabinet including a plurality of fiber optic connectors carried on said panel, each of said fiber optic connectors including means for receiving and mounting optical fibers to said fiber optic connectors with a first fiber extending to said rear face and with a second fiber extending to said forward face and with said fibers connected in optical alignment; *and*

*holding structure for holding a first set of a plurality of said fiber optic connectors mounted in right field at an angle directed toward said right side of the cabinet, and for holding a second set of a plurality of said fiber optic connectors mounted in said left field at an angle directed toward said left side of the cabinet*

[wherein said fiber optic connectors are provided with means for holding said plurality of fibers at a predetermined angle to a plane of said forward face with said angle selected to be less than 90 degrees].

15. An optical fiber distribution frame, comprising:

a structure having a plurality of cabinet attachment locations;

a plurality of cabinets attached to said structure at said plurality of attachment locations;

said plurality of cabinets including at least one connector cabinet having a panel accessible through both a rear and a forward face of said connector cabinet including a plurality of fiber optic connectors carried on said panel, *the panel having left and right fields adjacent left and right sides, respectively of said cabinet,* each of said fiber optic connectors including means for receiving and mounting optical fibers to said fiber optic connector with a first fiber extending through said rear face and with a second fiber extending through said forward face with said fibers connected in optical alignment; *and*

*holding structure for holding a first set of a plurality of said fiber optic connectors mounted in said right field at an angle directed toward said right side of the cabinet, and for holding a second set of a plurality of said fiber optic connectors mounted in said left field at an angle directed toward said left side of the cabinet*

[wherein said fiber optic connectors are provided with means for holding said plurality of fibers at a predetermined angle to a plane of said forward face with said angle selected to be less than 90 degrees].

Declaration of Mark W. Hendrickson, Ex. 6 at 000393–000395. ADC remarked to the Patent Office:

Claims 12 and 15 now recite that the panel has left and right fields, and holding structure holds a first set of a plurality of connectors mounted in the right field at an angle directed toward the right side of the cabinet, and holds a second set of a plurality of connectors mounted in the left field at an angle directed toward the left side of the cabinet.

Affidavit of Lindquist, Ex. 11 at 000397. On August 13, 1996, the Patent Office issued a reexamination certificate, determining that claims 12 and 15 were patentable as amended and that new claims 20 through 29 were patentable.

Telect filed a declaratory judgment action against ADC in the United States District Court for the Eastern District of Washington. Telect requests a declaratory judgment that the reexamined patent is invalid and that Telect's products do not infringe on the patent. By order dated October 29, 1997, the Honorable Chief Judge Wm. Fremming Nielson transferred Telect's case to the United States District Court for the District of Minnesota. This action was consolidated with the related case of ADC Telecommunications, Inc. v. Alcoa Fujikura Ltd., 97–1732 (DSD/JMM). ADC pleaded a counterclaim against Telect, alleging infringement.

Telect now moves for claim construction and summary judgment. Telect contends that it is entitled to summary judgment due to the invalidity of claims 12 and 15.[3] Telect argues that the amendments made during the reexamination proceedings impermissibly broadened the scope of the claims, in violation of 35 U.S.C. § 305.

## DISCUSSION

■ The court applies the same summary judgment standard to motions involving patent claims as it does to motions involving other claims. *See Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1561 (Fed.Cir.1988). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed. R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A dispute is genuine if the evidence is such that

---

**3.** Telect also challenges claims 13, 14, 16, 17, and 20 through 28 as dependent on claims 12 and 15.

it could cause a reasonable jury to return a verdict for either party. *Id.* at 252, 106 S.Ct. 2505.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. 2505. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. 2548.

■ Under 35 U.S.C. § 305, "the patent owner will be permitted to propose any amendment to his patent and a new claim or claims thereto, in order to distinguish the invention as claimed from the prior art . . . ." 35 U.S.C. § 305. However, "[n]o proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding under this chapter." *Id.* A claim has been impermissibly enlarged if it includes within its scope any subject matter that would not have infringed the original patent. *See Thermalloy, Inc. v. Aavid Engineering, Inc.,* 121 F.3d 691, 692 (Fed.Cir.1997); *Quantum Corp. v. Rodime, PLC,* 65 F.3d 1577, 1580 (Fed.Cir.1995), *cert. denied,* 517 U.S. 1167, 116 S.Ct. 1567, 134 L.Ed.2d 666 (1996). " 'A claim that is broader in any respect is considered to be broader than the original claims even though it may be narrower in other respects.' " *Quantum,* 65 F.3d at 1580 (quoting *In re Freeman,* 30 F.3d 1459, 1464 (Fed.Cir.1994)). A violation of section 305 renders the enlarged claim invalid. *See Thermalloy,* 121 F.3d at 692 (citing *Quantum,* 65 F.3d at 1584).

■ Whether amendments enlarge the scope of a claim is a matter of claim construction. *See Freeman,* 30 F.3d at 1464. The construction of patent claims is a matter of law exclusively within the province of the court. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). "The duty of the trial judge is to determine the meaning of the claims at issue, and to instruct the jury accordingly." *Exxon Chemical Patents, Inc. v. Lubrizol Corp.,* 64 F.3d 1553, 1555 (Fed.Cir. 1995), *cert. denied,* 518 U.S. 1020, 116 S.Ct. 2554, 135 L.Ed.2d 1073 (1996). In interpreting an asserted claim, the court looks first to the intrinsic evidence of record—the patent itself, including the claims, the specification and the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir.1996). The intrinsic evidence is "the most significant source of the legally operative meaning of disputed claim language." *Id.*

■ Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use the terms in a manner other than their ordinary meaning, as long as the terms are defined in the patent specification or file history. *Id.* at 1582. A patentee may even use terms in a manner contrary to or inconsistent with their ordinary meanings. *See Hormone Research Foundation, Inc. v. Genentech, Inc.,* 904 F.2d 1558, 1562 (Fed.Cir.1990), *cert. denied,* 499 U.S. 955, 111 S.Ct. 1434, 113 L.Ed.2d 485 (1991). The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication. *Vitronics,* 90 F.3d at 1582. Claims must be read in view of the specification, of which they are part. *Id.* The specification, however, cannot be used to eliminate words or limitations found in the claims. *See Texas Instruments, Inc. v. United States Int'l Trade Comm'n,* 988 F.2d 1165, 1171 (Fed. Cir.1993). The final source of intrinsic evidence that must be examined to construe the meaning of the claim terms is the prosecution history of the patent. *Vitronics,* 90 F.3d at 1582.

■ Extrinsic evidence may also be received, " 'to aid the court in coming to a correct conclusion' as to the 'true meaning of the language employed' in the patent." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 980 (Fed.Cir.1995), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testi-

mony, dictionaries, and learned treatises. This evidence may be helpful to explain scientific principles, the meaning of technical terms, and terms of art that appear in the patent and prosecution history.

*Id.* In *Vitronics,* the Federal Circuit addressed the import of technical treatises and dictionaries:

Although technical treatises and dictionaries fall within the category of extrinsic evidence, as they do not form a part of an integrated patent document, they are worthy of special note. Judges are free to consult such resources at any time in order to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents.

*Vitronics,* 90 F.3d at 1584 n. 6.

Telect specifically takes issue with the elimination of the following element from claims 12 and 15:

wherein said fiber optic connectors are provided with means for holding said plurality of fibers at a predetermined angle to a plane of said forward face with said angle selected to be less than 90 degrees[,]

and the addition of the following element to claims 12 and 15:

holding structure for holding a first set of a plurality of said fiber optic connectors mounted in said right field at an angle directed toward said right side of the cabinet, and for holding a second set of a plurality of said fiber optic connectors mounted in said left field at an angle directed toward said left side of the cabinet.

*See* Declaration of Mark Hendrickson, Ex. 5.

Telect argues that five changes were made during reexamination which enlarged the scope of the claims: first, Telect argues that the change from "means for holding" to "holding structure for holding" broadened the claims; second, Telect asserts that the amended claims no longer require that the fibers be held "at a predetermined angle to a plane of said forward face"; third, Telect argues that the elimination of the words "provided with" impermissibly broadened the claims; fourth, Telect argues that the change

from "fibers" being held at an angle to the "fiber optic connectors" being held at an angle broadened the claims; and fifth, Telect asserts that the claims were broadened because they no longer require that the fibers be held "at a predetermined angle."

Telect argues that ADC broadened the '955 patent during its reexamination by changing the claim language from "means for holding" to "holding structure for holding." Telect asserts that the amendment changed the claim element from a means-plus-function limitation to a structure claim. ADC asserts that both phrases are governed by 35 U.S.C. § 112, ¶ 6, and that the change did not broaden the scope of the claims.

■ According to 35 U.S.C. § 112, ¶ 6, "[a]n element in a claim ... may be expressed as a means or step for performing a specified function ... and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." *See* 35 U.S.C. § 112, ¶ 6. "[S]tructure disclosed in the specification is 'corresponding' structure only if the specification ... links or associates that structure to the function recited in the claims." *B. Braun Med., Inc. v. Abbott Laboratories,* 124 F.3d 1419, 1424 (Fed.Cir. 1997). The use of the term "means" has become so closely associated with "means-plus-function" clauses that it generally invokes section 112(6). *See Greenberg v. Ethicon Endo–Surgery, Inc.,* 91 F.3d 1580, 1584 (Fed.Cir.1996). However, the use of the word "means" is not required in order to invoke section 112(6). *Id.* "Conversely, '[t]he recitation of some structure in a means plus function element does not preclude the applicability of section 112(6).' " *York Products, Inc. v. Central Tractor Farm & Family Center,* 99 F.3d 1568, 1574 (Fed.Cir.1996) (quoting *Laitram Corp. v. Rexnord, Inc.,* 939 F.2d 1533, 1536 (Fed.Cir.1991)).

■ In this case, there is no dispute that the "means for holding" language was subject to section 112(6). Although the changed language in the limitation states "holding structure for holding," the clause does not recite an identified structure. Rather, the clause states a function; holding. Thus, the court must look to the specification to find

the corresponding structure that performs the holding function. The court determines that the claim language invokes section 112(6).[4] Thus, the change in the language from "means for holding" to "holding structure for holding" did not broaden the scope of the claims.[5]

▮ Telect argues that ADC broadened claims 12 and 15 as amended during reexamination because they no longer require that the fibers be held "at a predetermined angle to a plane of said forward face" of either the panel or the cabinet. Telect asserts that the limitation was eliminated so that now the angle is only referenced to the right and to the left which, it argues, is not relative to anything. ADC argues that Telect ignores the phrase "a plane of" when discussing the language in unamended claims 12 and 15. ADC asserts that the amended language in claims 12 and 15 preserves the requirement that the fibers be held at a predetermined angle to a plane of the forward face of the panel and cabinet. The court agrees.

ADC sought reissue of claims 12 and 15 to cover a product having a bent forward panel:

2. In each of the independent claims, the claims are amended to recite that the connectors are secured to the cabinet to hold the fibers at a predetermined angle to a plane of the forward face (as opposed to holding them at a predetermined angle to the panel). As mentioned, it was believed this change is necessary to prevent an unwarranted limiting interpretation of the claims which would not cover a connector having a forward panel which is provided with a plurality of bends such that the fibers could be secured at 90 degrees to the immediate area of the panel but still be at an angle with respect to the forward plane of the cabinet.

Affidavit of Timothy A. Lindquist, Ex. 8 at 000276–000277. Consistent with the specification and the prosecution history and contrary to Telect's argument, the plane of a bent panel or plate does not coincide with the actual or immediate surface of the panel or plate. Reissued claim 12 recites angling with respect to a plane of the forward face of the panel, and reissued claim 15 recites angling relative to a plane of the forward face of the cabinet. The reissued claims required that the connectors be held at an angle less than 90 degrees.

Although the reexamined claims 12 and 15 use different language than the reissued claims 12 and 15, the reexamined claims still require angling at less than ninety degrees to a plane of the forward face. By requiring angling to the left and the right of the cabinet, reexamined claims 12 and 15 require

---

**4.** Relying on ADC's assertion that an adapter is a corresponding structure for the means-plus-function element of "holding structure for holding," Telect argues that such a limitation would render claims 21 and 22 meaningless because they would recite adapters twice. Claims 20 through 22 state:

20. A frame according to claim 12 wherein said holding structure includes a mounting plate and opposing mounting clips.
21. A frame according to claim 20, wherein said holding structure further includes adapters attached to said mounting plate, the adapters being rotatable to left or right sides.
22. A frame according to claim 12, wherein said holding structure includes adapters rotatable to left or right sides.

ADC argues that Telect misconstrues the "means-plus-function" analysis because even assuming that the only means for holding disclosed in the specification is an adapter, a product need not have an adapter to infringe claim 12. However, an adapter is required to infringe claims 21 and 22. The court agrees with Telect that claims 21 and 22 are not rendered meaningless by the invocation of section 112(6).

Telect also asserts that ADC removed an "adapter requirement" during the reexamination. This argument also misconstrues the means-plus-function analysis under section 112(6). The "means for holding" limitation in the reissue claims did not state an "adapter requirement," rather the structure for holding is limited to the corresponding structure disclosed in the specification and its equivalents. Telect's argument is without merit.

**5.** Telect also asserts that the claims are invalid under 35 U.S.C. § 112, ¶ 2. That provision states that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. In *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, (Fed.Cir.1991), the Federal Circuit recognized that absent section 112(6), claim language which requires only a means for performing a function might be considered indefinite. In this case, the court interprets the language "holding structure for holding" as invoking section 112(6). The specification discloses structure that performs the recited function. Thus, the court concludes that Telect's argument fails.

angling relative to a plane of the forward face as recited in reissue claims 12 and 15. In addition, by requiring angling to the right or to the left sides of the cabinet, the reexamined claims necessarily require an angle less than 90 degrees from the plane of the forward face of the cabinet. Rather than broadening the scope of the claims, the language from the reexamination narrowed the claims to distinguish the reissued claims from the Bylander patent, which discloses angling of all the connectors to the same side of the cabinet.

▬ In support of its argument that ADC broadened claims 12 and 15 to cover subject matter outside the scope of the reissued claims, Telect offers an illustration at Exhibit A. *See* Exhibits to Telect's Revised Proposed Order, Ex. A. In essence, Exhibit A essentially illustrates a connector cabinet with a bent front panel. ADC argues that the device in Exhibit A is not an example of new subject matter which was outside the scope of the '955 patent prior to reexamination because Exhibit A is essentially an example of a corrugated panel product, except that Exhibit A is only one corrugated portion of the corrugated panel disclosed in Bylander. The court agrees that the plane of the panel and cabinet on the device in Exhibit A is the same as a portion of the plane of the panel in Bylander. Whereas the connectors in Exhibit A are at a 90–degree angle to the actual forward face of the panel, the connectors are angled at less than 90 degrees to the plane of the forward face of the panel and cabinet. Therefore, Exhibit A is not outside of the scope of reissued claims 12 and 15. Claims 12 and 15 were not broadened by this change in language.

Telect argues that ADC broadened the scope of reissued claims 12 and 15 because the reissued patent required the fiber optic connectors to be "provided with means for holding." Telect seems to argue that because the adapters "fit together" with the fiber optic connectors, the adapter was part of the connector. Telect summarizes its argument as follows:

> The amendment therefore moves the angling function from a micro level (i.e. provided with the fiber optic connectors), to a macro level wherein the angling function can presumably be accomplished by the angling or reconfiguration of the front panel, the cabinet and/or the distribution frame. This broadens the claim.

Memorandum of Telect in Support of Motion at 10. Telect's argument, however, ignores the claim language and specification. The phrase "provided with" does not require that the holding structure be a part of the connector. Rather, the phrase requires that there be a means for holding the fibers at an angle. The means for holding described as the preferred embodiment in the specification is a structure separate from the connector. *See Vitronics,* 90 F.3d at 1583 (recognizing that an interpretation which excludes a preferred embodiment "is rarely, if ever, correct and would require highly persuasive evidentiary support"). Reexamined claims 12 and 15 require means for holding the connectors at an angle. Like the reissued claims 12 and 15, the holding structure in the reexamined claims need not be a part of the connector, but may be a separate structure that provides the angling to the connectors. The omission of the "provided with" language did not broaden the scope of claims 12 and 15.

▬ Telect argues that the reissued claims required that the "fibers" be held at an angle, whereas the reexamined claims require that the "fiber optic connectors" be held at an angle. Telect asserts that the reissued claims would not cover situations in which the fiber optic connector is at an angle, but the fibers themselves are not held at an angle with respect to the forward face of the front panel or the forward face of the connector cabinet. ADC asserts that Telect's drawings in support of this argument are a less-than-candid illustration and that the angling of the connectors necessarily requires that the fibers are similarly angled. The court agrees.

▬ Reissued claims 12 and 15 include an element in which "each of said fiber optic connectors including means for receiving and mounting optical fibers to said fiber optic connectors with a first fiber extending to said rear face and with a second fiber extending to said forward face and with said fibers connected in optical alignment." The first fiber and second fiber are held in optical alignment within the connector. The portion

of the fiber that is held in optical alignment within the connector follows the same path as the connector. The court concludes that the change in language did not broaden the scope of the patent claims.

 Telect argues that claims 12 and 15 were broadened during reexamination because prior to reexamination, claims 12 and 15 required the holding to be "at a predetermined angle" and after reexamination the claims only require the holding to be "at an angle." ADC asserts that the ordinary meaning of the words in claims 12 and 15, when interpreted as a whole, have always required that the connectors be held at a predetermined angle, regardless of whether the word "predetermined" is used. ADC argues that since the word "predetermined" does not affect the scope of the unamended claims 12 and 15, eliminating the word during reexamination did not broaden the scope of claims 12 and 15. ADC relies on the claim language, the specification, and prosecution history to further its argument.

The court must consider the language of the limitation, giving the terms in the claim their ordinary meaning. *See Vitronics*, 90 F.3d at 1582. The reexamined claims include the limitation "holding ... at an angle." The ordinary meaning of "hold" is to impose restraint upon or limit in motion or action. Webster's Third New International Dictionary 1078 (1981). The ordinary meaning of "an" angle is a single angle. *Id.* at 1. ADC argues that the reissue language is consistent with Telect's assertion that "predetermined" means decided or fixed beforehand or in advance because the ordinary meaning of "holding ... at an angle" is fixing or restraining at a single angle. In addition to the claim language, ADC refers to the preferred embodiment in the specification which describes an adapter that restrains or holds the connectors and fibers at a single fixed angle. ADC also asserts that it used the terms "angle" and "predetermined angle" interchangeably during the prosecution of the patent. The court agrees with ADC that the elimination of the term "predetermined" does not broaden the scope of the claims.[6]

6. In support of its argument that the claims were broadened during reexamination, Telect submitted an illustration of a device which includes fiber optic connectors mounted on rotatable

## CONCLUSION

Based upon a review of the file, record and proceedings herein, the court concludes that plaintiff Telect has failed in its burden to establish that the claims of the reissue patent '955, as amended by reexamination certificate B1 Re. 34,955, were impermissibly broadened in violation of 35 U.S.C. § 305. Accordingly, **IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment on invalidity, postured as a motion for claim interpretation, is denied (Doc. No. 45).

axes. *See* Exhibits to Telect's Revised Proposed Order, Ex. C. ADC acknowledges that the device disclosed in Exhibit C is not covered by either the reexamined or reissued claims.